**Salim FARAJ, Individually and as Parent and Next Friend of Christine Faraj**

**v.**

**ALLSTATE INSURANCE COMPANY.**

**No. 83–619–Appeal.**

Supreme Court of Rhode Island.

Dec. 21, 1984.

Ronald J. Resmini, Providence, for plaintiff.

William Barker, Chicago, Ill., John H. Blish, William R. Landry, Edwards & Angell, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case is certified to us pursuant to the provisions of G.L.1956 (1969 Reenactment) § 9–24–25 upon the filing in the Superior Court of an agreed statement of facts that poses questions concerning the validity or effect of purported exclusions in respect to certain relatives contained in an automobile liability policy and also in the uninsured-motorist portion of said policy. The facts set forth in the agreed statement are as follows.

"Plaintiff, Salim Faraj ('Salim'), Individually and as Parent and Next Friend of Christine Faraj ('Christine'), and defendant, Allstate Insurance Company ('Allstate'), by their respective attorneys and pursuant to *Rhode Island General Laws*, § 9–24–25, hereby agree to the following statement of facts.

"1. Salim is the father and next friend of Christine, a minor child, and they reside in Providence, Rhode Island. Lena Faraj ('Lena'), now deceased, was the mother of Christine. At all pertinent times prior to Lena's death, Salim, Lena and Christine resided in the same household.

"2. On December 21, 1982, Lena was operating a 1977 Chevrolet automobile owned by her, with Christine as a passenger. Lena negligently operated the said automobile so as to cause a collision in Providence, Rhode Island. At all pertinent times, Christine exercised due care for her own safety. As a direct and proximate result of Lena's negligence in causing the said collision, Christine suffered severe personal injuries and pain and suffering. Salim has expended great sums of money on Christine's behalf for hospital, physician, and other medical services and care made necessary by the injuries suffered by Christine in said collision.

"3. Because of the events described in Paragraph 2, Lena became liable to plaintiff in the amount of Fifty Thousand ($50,000.00) Dollars, and the administrator of her estate has succeeded to that liability.

"4. Allstate is a corporation organized and acting under the laws of the State of Illinois, and authorized to engage in the business of insurance in the State of Rhode Island. The 1977 Chevrolet automobile being operated by Lena at the time of the aforementioned collision was described in the declarations of a policy of insurance ('Policy'), issued by Allstate to Salim as named insured, as an automobile to which Coverages AA and SS, among others, applied. The Policy was in full force and effect at the time of that collision. (A true and correct copy of that policy is attached hereto as Exhibit A.) Lena, as the spouse of Salim, residing in the same household, was also deemed a named insured under the Policy. Christine, as a relative of Salim residing in the same household, was an insured under the Policy.

"5. The Policy provided, in Coverage AA—Bodily Injury, that 'Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of 1. bodily injury sustained by any person....' Coverage AA also provided that it 'does not apply ... (7) bodily injury to any person who is related by blood, marriage, or adoption to an insured against whom claim is made if such person resides in the same household as such insured.' Pursuant to *Rhode Island General Laws*, § 27–7–1, Allstate is directly liable to plaintiff for any payment due under Coverage AA with respect to Christine's injuries. Allstate's limits of liability under Coverage AA are Fifty Thousand ($50,000.00) Dollars for all injuries sustained by any one person as the result of any one occurrence and One Hundred Thousand ($100,000.00) Dollars for all injuries sustained by two or more persons as the result of any one occurrence.

"6. The Policy also provides, in Coverage SS—Uninsured Motorists Insurance

that 'Allstate will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of 1. bodily injury ... sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile.' So far as pertinent here, the term 'uninsured automobile' is defined to mean 'a motor vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no automobile liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is an automobile liability bond or insurance policy applicable at the time of the accident but the company writing the same either has denied coverage thereunder or is or becomes insolvent ...'

but the term *'uninsured automobile'* shall not include:

(i) an insured automobile ...

Insofar as pertinent here, the term 'insured automobile' is defined to mean 'an automobile (a) described in the declarations as an insured automobile to which the bodily injury liability coverage of the policy applies....' Allstate's limits of liability under Coverage SS are Twenty Five Thousand ($25,000.00) Dollars for all injuries sustained by any one person as the result of any one accident and Fifty Thousand ($50,000.00) Dollars for all injuries sustained by two or more persons as the result of any one accident. These limits of liability are applicable to each of two cars.

"7. Plaintiff contends that Allstate is liable to them under Coverage AA. Allstate contends that the exclusion quoted in Paragraph 5 hereof renders Coverage AA inapplicable to liability of Lena arising from Christine's injuries. Plaintiff contends that the exclusion is invalid and/or

ineffective to render Coverage AA inapplicable to such liability. It is agreed that (a) if the exclusion is invalid or ineffective for that purpose, wholly or in part, Allstate is liable to plaintiff for the maximum amount payable under Coverage AA of the Policy, considered without regard to any portion of the exclusion which is invalid or ineffective.

"8. Plaintiff contends that if Allstate is not liable to them under Coverage AA, then it is liable to them under Coverage SS. Allstate contends that the 1977 Chevrolet automobile operated by Lena at the time of the collision was not an 'uninsured automobile' within the meaning of the Policy even if Allstate is not liable under Coverage AA, and that Coverage SS does not apply to damages recoverable on account of Christine's injuries as described above. It is agreed that, if Allstate is not liable to plaintiff under Coverage AA and if Coverage SS is applicable to damages recoverable on account of Christine's injuries as described above then Allstate is liable to plaintiff in the amount of Fifty Thousand ($50,000.00) Dollars and that otherwise Allstate is not liable to plaintiff under Coverage SS.

"9. It is agreed that Allstate is not liable to plaintiff for any other benefit payable under the Policy on account of the injuries suffered by Christine as described above. It is agreed that any judgment in this action shall not prejudice any rights of plaintiff to bring an action against Allstate for bad faith denial or delay of benefits adjudicated in this action to be due under the Policy on account of those injuries.

"10. The Administrator of the Estate of Lena Faraj, deceased, is not a party to this agreement and is not bound by its terms. However, under Coverage AA, Allstate is entitled to 'make such settlement of any claim or suit as it deems expedient.' Plaintiff has agreed that, in consideration for the agreements of Allstate set forth above, he will accept whatever sums may be found payable under the Policy in full settlement of all claims which he has or may have against the Estate of Lena Faraj arising

out of the injuries suffered by Christine as described above and that he will not seek any further recovery from the Estate for those injuries.

"11. Upon determination of the validity and effect of the terms of the Allstate policy, the court may enter final judgment as between the parties in accordance with the facts and agreements set forth above."

Upon this agreed statement of facts two major issues are presented: (1) whether the exclusion under coverage AA of bodily injury to any person related by blood, marriage, or adoption who resides in the same household as the insured is valid, and (2) whether the purported exclusion of an insured automobile under uninsured-motorist coverage would preclude plaintiff from recovery under the circumstances of this case. We shall deal with these issues in sequential order.

I

## THE VALIDITY OF THE FAMILY MEMBERS EXCLUSION UNDER COVERAGE AA

The Rhode Island Legislature has not enacted a compulsory motor-vehicle-insurance statute. It has provided in G.L.1956 (1979 Reenactment) § 27–7–1 that "[e]very policy hereafter written insuring against liability for * * * personal injur[y] * * * shall contain provisions to the effect that the insurer shall be directly liable to the injured party and * * * to pay him the amount of damages for which such insured is liable." This statutory provision does not in any way describe the scope of the coverage or the persons to whom such coverage shall be extended.

■ Salim argues that the decisions of this court abrogating the doctrine of interspousal immunity, Digby v. Digby, 120 R.I. 299, 388 A.2d 1 (1978), and parental-child immunity, Silva v. Silva, R.I., 446 A.2d

1013 (1982), in effect would invalidate such family exclusions on the ground that they are violative of·the public policy of this state as enunciated in the foregoing judicial decisions. However, this argument misses the mark since Silva and Digby did not purport to determine the scope of contract between an insurer and an insured, but only to determine the right of action between parent and child on the one hand, and husband and wife on the other hand. In this state we have recognized that generally a person is free to obtain liability insurance or not as he chooses unless and until, as a result of inability to pay a judgment arising out of an accident or by virtue of committing certain offenses against the motor-vehicle code, the financial-responsibility statutes become applicable. See Amick v. Liberty Mutual Insurance Co., R.I., 455 A.2d 793, 795 (1983); Allstate Insurance Co. v. Fusco, 101 R.I. 350, 355, 223 A.2d 447, 450 (1966); Berberian v. Lussier, 87 R.I. 226, 232, 139 A.2d 869, 872 (1958).[1]

In the case at bar there is no suggestion that the provisions of G.L.1956 (1982 Reenactment) chapter 31 of title 31, or chapter 32 of title 31 (requirement of proof of financial responsibility) were in any way applicable to Salim or Lena.

In the absence of a statute to the contrary, those courts that have considered the question have upheld the validity of family-exclusion clauses in liability policies. See, e.g., Holloway v. State Farm Mutual Automobile Insurance Co., 275 Ala. 41, 151 So.2d 774 (1963); Florida Farm Bureau Insurance Co. v. Government Employees Insurance Co., 387 So.2d 932 (Fla. 1980); Morris v. State Farm Mutual Automobile Insurance Co., 88 Ga.App. 844, 78 S.E.2d 354 (1953); Porter v. Farmers Insurance Co. of Idaho, 102 Idaho 132, 627 P.2d 311 (1981); Kentucky Farm Bureau Mutual Insurance Co. v. Harp, 423 S.W.2d 233 (Ky.Ct.App.1967). But see

---

1. The financial-responsibility requirements for those involved in an accident are set forth in G.L.1956 (1982 Reenactment) § 31–31–4 et seq. The requirements for those who have commit-

ted certain violations of the motor-vehicle code are contained in G.L.1956 (1982 Reenactment) § 31–32–1 et seq.

*Bishop v. Allstate Insurance Co.,* 623 S.W.2d 865 (Ky.1981) (invalidating family exclusion after adoption of a compulsory insurance law).

An annotation contained in 46 A.L.R.3d 1024, 1029 (1972), suggests:

"All of the cases in this annotation support the general rule that, in the absence of a statutory prohibition to the contrary, provisions excluding from coverage members of the insured's family or household are valid and effective to protect the insurer against claims for injuries to persons who fall within the specified classes."

In a recent case the Supreme Court of Minnesota commented upon the effect of the abrogation of parental-child immunity upon such a family exclusion as follows:

"The well-settled general rule in the construction of insurance contracts, however, provides that parties are free to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into." *American Family Mutual Insurance Co. v. Ryan,* 330 N.W.2d 113, 115 (Minn.1983).

■ Nothing in the Rhode Island statutes purports to define the scope of coverage in an automobile liability policy (except for uninsured motorist's coverage that will be dealt with hereafter) or the persons who shall be excluded within the scope of such coverage. Consequently, in the application of the general rule, we can see no basis for declaring family-exclusion clauses under

coverage AA invalid. Therefore, Salim is unable to recover under this portion of Allstate's policy.

## II

## IS THE MINOR CHILD ENTITLED TO COVERAGE SS PURSUANT TO THE UNINSURED-MOTORIST PROVISIONS OF THE POLICY?

In connection with uninsured-motorist protection, the Legislature has provided specific requirements for the coverage that must be offered together with every automobile liability policy. These requirements are set forth in G.L.1956 (1979 Reenactment) § 27–7–2.1.[2] This statute requires that such a policy should offer "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *." There is no question under the agreed statement of facts that the minor child came within the definition of "insured" under Salim's policy issued by Allstate. (See agreed statement paragraph 4.)

Consequently, the sole question is whether coverage in regard to her was excluded by the phrase "but the term *'uninsured automobile'* shall not include (i) *an insured automobile.*"

■ If this phrase is to preclude coverage under the uninsured-motorist section of the policy, it will be necessary to determine whether this automobile was insured in regard to the minor child. We are of the opinion that it was not so insured as far as this minor child was concerned because she

---

**2.** General Laws 1956 (1979 Reenactment) § 27–7–2.1, as amended by P.L.1981, ch. 251, § 2, provides in pertinent part as follows:

"No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be delivered or issued* for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for property damage

caused by collision, bodily injury or death set forth in § 31–31–7 as amended, under provisions approved by the insurance commissioner, *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage, bodily injury, sickness or disease, including death, resulting therefrom, provided* that the named insured shall have the right to reject such coverage, or that portion thereof that applies to property damage." (Emphasis added.)

was specifically excluded from coverage AA by the terms of the policy as a relative living within the same household.

This is a question of first impression in this state, but a similar issue was presented to the Supreme Court of Oregon in *Bowsher v. State Farm Fire and Casualty Co.*, 244 Or. 549, 419 P.2d 606 (1966). In that case the plaintiff, Bowsher, was a passenger in his own automobile, which at the time and place of the accident was being driven by one Simpson. Simpson was uninsured. The bodily-injury liability insurance (coverage A) did not cover Bowsher because he was specifically excluded by the following clause:

"'This insurance does not apply under:

\* \* \* \* \* \*

(i) Coverage A, to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured \* \* \*.'" *Bowsher*, 244 Or. at 550 n. 2, 419 P.2d at 607 n. 2.

As in the case at bar, the insured was excluded from coverage under the bodily-injury-liability portion of his insurance. The question then arose in respect to whether he was insured under the "uninsured automobile clause" prescribed by Oregon statutes. In passing upon this question, the court noted that the company contended that since Bowsher was riding in an "insured" automobile, he could not claim coverage under a policy provision expressly written to protect him against injuries caused by operators of "uninsured automobiles." The court responded to this argument as follows:

"We hold that Bowsher and his injuries are the key to the problem. As far as Bowsher was concerned, Simpson was operating an 'uninsured motor vehicle' within the meaning of Bowsher's policy as the policy must be construed under ORS 736.317(2)." *Id.* at 551, 419 P.2d at 607.

The Supreme Court of Oregon later expanded upon its rationale:

"We have been cited to no cases exactly like the one before us. We believe, however, that the proper focus of inquiry in such cases is to ascertain whether the injury for which a claim is made was covered by liability insurance, assuming that liability can be established. Such a focus seems more relevant than a general inquiry whether some kind of insurance covered, for some purposes, the automobile involved in the accident, regardless of the applicability of such insurance to the injuries sustained. The availability of public-liability insurance to protect strangers was of no value to Bowsher in this case. As to Bowsher's own injuries, the tort-feasor, if there was one, was wholly uninsured. Therefore, in the only way that could be relevant to the purposes of the statute, Bowsher's automobile was, as to Bowsher, an 'uninsured motor vehicle.'" *Id.* at 552–53, 419 P.2d at 608.

We are persuaded by the reasoning of the Oregon Supreme Court, but Allstate contends that the holding in *Bowsher* was contrary to our holdings in *Aldcroft v. Fidelity and Casualty Co. of New York*, 106 R.I. 311, 259 A.2d 408 (1969), and *Ziegelmayer v. Allstate Insurance Co.*, 121 R.I. 818, 403 A.2d 653 (1979). We cannot accept Allstate's argument on this point. In both cases we were dealing with an issue wholly different from that presented by *Bowsher* or the case at bar. In *Aldcroft* the question presented was whether the insurer might reduce the amount of uninsured-motor-vehicle protection by any amounts collected by the insured under a work[er]'s compensation act, a disability-benefits law, or other similar law. We held that the policy of the statute, § 27–7–2.1, would render such a provision void. We further held that the fact that the uninsured motorist had filed a bond in the amount of $3,500 pursuant to the Safety Responsibility Act of the State of Rhode Island then in force would not reduce the liability of the insurer under its policy. In *Ziegelmayer* we held that an uninsured-motorist coverage in the plaintiff's policy

would not be triggered so long as the tortfeasor was covered by an automobile liability insurance policy that met the minimum requirements of § 31–31–7. We stated that since the tortfeasor was insured for the minimum amounts required by the statute, he was not an "uninsured motorist."

Neither of these cases dealt with the issue of a motor vehicle that in regard to one defined as an "insured" provided no liability coverage whatsoever. Consequently, we are not precluded from accepting the principles enunciated in *Bowsher v. The State Farm Fire and Casualty Co.,* supra, by our decisions in either *Aldcroft* or *Ziegelmayer.*

In *Barnes v. Powell,* 49 Ill.2d 449, 275 N.E.2d 377 (1971), the Supreme Court of Illinois was faced with a similar problem. The plaintiff, Agatha Barnes, was riding as a passenger in an automobile of which she was co-owner. The automobile was driven by William Powell, who was uninsured at the time he caused the automobile to leave the road and strike a large rock. The plaintiff was excluded from liability coverage under the policy by a family-exclusion clause. As in the case at bar, there was an express provision prescribing that "uninsured automobile" shall not include "an insured automobile."

In confronting this issue, the court observed:

"LaSalle [the insurance carrier] argues that a vehicle which otherwise meets the definition of 'insured automobile' according to the terms of the policy, does not become an 'uninsured' automobile merely because the driver in fact has no insurance. We find that the intent of the legislature was that the uninsured motorist coverage would protect an insured generally against injuries caused by motorists who are uninsured, and by hit-and-run motorists, and that this would complement the liability coverage. The distinction that the uninsured motorist was the driver of the automobile in which plaintiff was a passenger, rather than the driver of another automobile, is not decisive. As to this particular plaintiff, because she was excluded from the liability coverage of the policy, the automobile was not an insured automobile and the driver was not an insured motorist, notwithstanding that as to all others the automobile and the driver may have been insured. Because no liability insurance was applicable to the plaintiff at the time of the accident, her uninsured motorist coverage necessarily became effective in light of the legislative mandate. Our conclusion is in accord with *Bowsher v. State Farm Fire and Cas. Co.,* 244 Ore. 549, 419 P.2d 606, and with the practice of construing limitations on coverage liberally in favor of the policyholder." *Barnes,* 49 Ill.2d at 454, 275 N.E.2d at 379–80.

Similar results obtained in *Markham v. State Farm Mutual Automobile Insurance Co.,* 326 F.Supp. 39 (W.D.Okla.1971), rev'd on other grounds, 464 F.2d 703 (10th Cir.1972) (Okla. statute construed); *State Farm Mutual Automobile Insurance Co. v. Herron,* 123 Ariz. 315, 599 P.2d 768 (1979); *Rodman v. State Farm Mutual Automobile Insurance Co.,* 208 N.W.2d 903 (Iowa 1973); *Aetna Casualty and Surety Co. v. Kellam,* 207 Va. 736, 152 S.E.2d 287 (1967).

As in *Bowsher,* we are of the opinion that plaintiff is entitled to recover under the interpretation of the language in the policy. Christine was not entitled to the liability coverage under her father's policy while riding in her father's automobile. Even though she came within the definition of "insured" under said policy, as far as she is concerned the automobile was uninsured in respect to liability coverage AA. Consequently, she was covered under the uninsured-automobile coverage denominated coverage SS pursuant to the provisions of her father's policy.

Therefore, in accordance with the agreed statement of facts, paragraph 8, Allstate is liable to the plaintiff in the amount of $50,000.

For the reasons stated, pursuant to the provisions of § 9–24–25, the papers in this case are hereby ordered to be remanded to the Superior Court with our decision certified thereon, with directions that the Superior Court shall enter final judgment in accordance therewith.