Raymond J. BLAIS et al.

v.

AETNA CASUALTY & SURETY CO.

No. 84–228–Appeal.

Supreme Court of Rhode Island.

June 2, 1987.

Gary J. Levine, Stephen G. Linder, Inc., Providence, for plaintiff.

Paul Curcio, Gerald John Petros, Hinckley, Allen, Tobin & Silverstein, Providence, for defendant.

OPINION

KELLEHER, Justice.

On June 6, 1971 Raymond Blais of Pawtucket, Rhode Island, was driving the family automobile along the streets of Boston, Massachusetts. With him on this occasion was his wife, Elta, and their daughter, Cheryl. In front of the Blais vehicle was a Boston police cruiser. When Raymond observed the cruiser making a turn, he brought the vehicle to a halt. At that moment, the Blais vehicle was struck in the rear by an automobile operated by John Colombo and owned by John's wife, Emily. The Colombos were Massachusetts residents. Emily's vehicle was insured by Home Indemnity Insurance Company of New York. The policy was subject to the provisions of Massachusetts' "no-fault" insurance law. Little did the Blais family realize that their chance encounter with the Colombos would give rise to extended litigation regarding their uninsured-motorist coverage provided by their insurer, Aetna Casualty & Surety Company. This controversy, that has been making its way through our judicial system for about sixteen years, presents an issue that should be of some interest to the many Rhode Islanders who each and every day drive in the Bay State for a variety of reasons including employment, education, shopping, or spending some time with the Red Sox, Celtics, Bruins, or Patriots.

The Colombos had obtained two types of coverage for their vehicle. One coverage was in conformity with the Massachusetts compulsory-bodily-injury-liability insurance law which has coverage limits of $5,000 for each person injured and $10,000 for each incident. The coverage was restricted to incidents arising from the use of motor vehicles upon the "ways" of the Commonwealth. Coverage B contained no geographic limitations and the dollar limitations were, at the time of the Blais/Colombo collision, in specific conformity with Rhode Island's financial responsibility law, G.L. 1956 (1968 Reenactment) § 31–31–7.

Aetna has paid for the medical expenses incurred by the plaintiffs as a result of their unexpected encounter with the Colombos. Expenses amounted to approximately $365.

This figure is of some significance in this controversy because a Massachusetts statute, in effect at the time of the collision, provided that a plaintiff in any tort action may recover damages for pain and suffering arising out of the ownership, maintenance, or use of a motor vehicle within the Commonwealth only if the reasonable and necessary expenses incurred in the treatment of such injuries are in excess of $500. Mass. Gen. Laws Ann., ch. 231, § 6D (1985). It is conceded that the only issue unresolved is whether Elta and Cheryl Blais can prevail on their claim for pain and suffering for which they are seeking reimbursement from Aetna. All concerned agree that no action lies against the Colombos.

Because Massachusetts law bars Elta and Cheryl Blais from recovery against the true tortfeasor, they now contend that the Colombos had no insurance applicable to their claim, rendering the Colombo vehicle "uninsured" within the meaning of the uninsured-motorist coverage provided by Aetna. In support of this position, reliance is placed upon *Faraj v. Allstate Insurance Co.*, 486 A.2d 582 (R.I. 1984) and *Ziegelmayer v. Allstate Insurance Co.*, 121 R.I. 818, 820, 403 A.2d 653, 655 (1979). The

validity of the argument advanced by plaintiffs must be determined by an examination of the scope and purpose of the two relevant Rhode Island statutes. G.L. 1956 (1968 Reenactment) §§ 27–7–2.1, as amended by P.L. 1970, ch. 275, § 1; and § 31–31–7.[1]

Section 27–7–2.1 provides that no automobile insurance policy shall be delivered in this state unless coverage is provided therein or supplemental thereto for the protection of the insured persons who are *"legally entitled to recover damages* from owners or operators of uninsured motor vehicles." (Emphasis added.) A motorist whose liability insurance policy is for limits less than those specified by § 31–31–7 is to be considered "uninsured" for the purposes of § 27–7–2.1. *All-state Insurance Co. v. Fusco*, 101 R.I. 350, 223 A.2d 447 (1966). At the time of the rear-end collision, the required limits were $10,000 for any one person and $20,000 for two or more persons in any one mishap. In reviewing the purpose of the uninsured motorist laws, this court has held that these laws "were designed to provide the insured with protection equivalent to that which would have been available to him in the event that he had an accident with a negligent motorist insured by the minimum coverage mandated by § 31–31–7." *Ziegelmayer*, 121 R.I. at 820, 403 A.2d at 655.

The Blais family reminds us of what was said in Ziegelmayer, and they also point to *Faraj*, in which a minor, injured while riding in his mother's car, made a claim against his mother's policy that was rejected because of a family-exclusion clause, but then made a claim under the uninsured-motorist section of the policy. In upholding the claim, we said

"that the proper focus of inquiry in such cases is to ascertain whether the injury for which a claim is made was covered by liability insurance, assuming that liability can be established. Such a focus seems more relevant than a general inquiry whether some kind of insurance covered, for some purposes, the automobile in-

---

1. These statutes have been amended since the June 1971 collision occurred. Reference will be made to the language of the statutes in effect at that time.

volved in the accident, regardless of the applicability of such insurance to the injuries sustained." *Faraj*, 486 A.2d at 587 (quoting *Bowsher v. State Farm Fire and Casualty Co.*, 244 Or. 549, 552–53, 419 P.2d 606, 608 (1966)).

Further, although we held in *Ziegelmayer* that failure on the part of the tortfeasor to carry the minimum insurance required by statute is a condition precedent to recovery under uninsured-motorist coverage, plaintiffs point out that we distinguished, in *Faraj*, the *Ziegelmayer* decision[2] on the grounds that *Ziegelmayer* did not deal "with the issue of a motor vehicle that in regard to one defined as an 'insured' provided no liability coverage whatsoever." *Faraj*, 486 A.2d at 588. The plaintiffs cite these cases for the proposition that the Colombos were not insured so far as plaintiffs were concerned because no liability insurance "whatsoever" was carried by the Colombos "applicable" to plaintiffs' claims.

The difficulty with plaintiffs' argument lies in the existence of the Massachusetts statute prohibiting the recovery of damages for pain and suffering when the reasonable and necessary expenses treating such injuries do not exceed $500. Mass. Gen. Law Ann., ch. 231, § 6D (1985). While the contract of insurance between plaintiffs and Aetna must be construed in accordance with Rhode Island statutes and case law, reference must be made to the very Massachusetts statute that is dispositive on the issue of whether an action by plaintiffs against the Colombos will even lie. The plaintiffs' position fails to account for the express requirement of § 27–7–2.1 that the insured policyholder be "legally entitled to recover damages" from the owner or operator of the uninsured motor vehicle.

■ Several years ago in *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917 (1968),

it was decided that in negligence disputes involving a conflict in the laws of various states this court would no longer have an unswerving adherence to the principle which requires the application of the law of the jurisdiction where the injury occurred. Instead, any determination regarding the applicable law will be made after a consideration of several significant factors, one of which is the location where the injury occurred. The ultimate choice of law will depend, however, upon a determination regarding which jurisdiction had the most significant interest in the litigation. In this interest-weighing approach many factors are to be considered, including not only the place where the injury occurred, but, in addition, the place where the conduct causing the injury occurred, the domicile or residence of the litigants, and the place where the relationship, if any, between the litigants is centered. *Brown v. Church of the Holy Name of Jesus*, 105 R.I. 322, 326–27, 252 A.2d 176, 179 (1969). Applying these factors to the controversy before us, there is no doubt that the tortious acts occurred and that the injuries were suffered in Massachusetts and that the plaintiffs' right to recover is governed by an insurance contract entered into in Massachusetts. Consequently, it is our belief that Massachusetts has the more significant interest in this litigation.

It should be pointed out that under any rationale of the current principles of conflict of laws which are applicable to personal injury actions, Massachusetts' interest would still be the more significant. Restatement (Second) of Conflict of Laws § 146 at 403 states in pertinent part:

"in an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship* * *."

2. Ziegelmayer was the owner and operator of an automobile that was struck by an operator who carried automobile liability insurance in a total amount of $20,000. This amount satisfied the requirement of our uninsured-motorist legislation. Ziegelmayer, whose damages exceeded $18,000, and her two passengers shared in a monetary settlement that included all the insurance proceeds plus a $5,000 contribution from the errant motorist. Her share of this settlement was about $8,333. Her claim against Allstate was rejected at both the trial and the appellate levels because the tortfeasor automobile was not an uninsured motor vehicle as that term is defined in our statute.

Comment (d) under this section makes it clear that in virtually all instances where the conduct and the injury occurs in the same state, that state has the dominant interest in regulating and determining whether the interest is entitled to legal protection.

■ We hold that the Massachusetts statute governs whether plaintiffs would be entitled to recover damages for pain and suffering from the Colombos. We hold that they would not be entitled to recover those damages. Our holding in *Faraj*, allowing recovery under uninsuredmotorist coverage even though the motorist had insurance, came in the context of a case involving a plaintiff who, when he made a claim against the motorist, learned that *no* insurance coverage was applicable to that claim owing to a valid exemption. Had the plaintiff in *Faraj* suffered damages as high as $1,000,000, for example, still no insurance would have been applicable to that plaintiff's claim. In such a circumstance the responsible motorist was truly "uninsured" as far as the plaintiff was concerned. In this case, no tort action lies against the Colombos by plaintiffs for these damages simply because of the circumstances in which plaintiffs find themselves. If plaintiffs' reasonable and necessary medical expenses had exceeded $500, the Colombos' insurer would have responded to plaintiffs' claim. Furthermore, the errant motorist in *Ziegelmayer* was, concerning the claimant, insured for the minimum coverage mandated by law whereas the motorist in *Faraj*, concerning the claimant, had no insurance "whatsoever" applicable to the claim. In this case the Colombos had insurance applicable to plaintiffs' claim but for the valid Massachusetts bar to recovery. We hold that in a circumstance such as this, plaintiffs are not entitled to recover under the uninsured-motorist coverage of their automobile insurance policy.

We note that our holding is not unique. In *State Farm Mutual Automobile Insurance Co. v. Crockett*, 103 Cal. App. 3d 652, 163 Cal. Rptr. 206 (1980), a California resident and another motorist were involved in a motor-vehicle collision in Hawaii. Hawaii had, as part of its nofault insurance law, abolished the right to sue for damages of any person whose medical expenses did not exceed $1,500. The plaintiffs, having less than $1,500 in medical expenses, made a claim under their own uninsured-motorist coverage upon returning to California. When the carrier rejected the claim the plaintiffs appealed. The court held that because the Hawaii vehicle was insured in accordance with California statutory minima, it was not, under California law, an uninsured vehicle. *Id.* at 658, 163 Cal.Rptr. at 209. Further, the court held that because the Hawaii statute had abolished tort liability in situations in which medical expenses do not exceed $1,500, the Hawaii motorist had no legal liability toward the plaintiffs. *Id.* Because no legal liability toward the plaintiffs existed, the plaintiffs were not "legally entitled to recover" damages from the automobile operator and therefore were not entitled to recover under their uninsured-motorist coverage since such coverage insures "for all sums within the financial responsibility limits which such persons are legally entitled to recover." *Id.*

The issue presently before us is the subject of a brief discussion in Annot. 40 A.L.R. 4th 1202 (1985). The subject of the annotation was *Samack v. Travelers Insurance Co.*, 111 Ill.App.3d 61, 66 Ill.Dec. 839, 443 N.E.2d 765 (1982), in which the passenger in a motor vehicle was permitted to recover against her insurer in a similar circumstance to the present case. There the court continued a judicial policy of rejecting "restrictive policy provisions" so as to further the legislative goal of providing "extensive uninsured motorist coverage." Such sentiments may be laudable but cannot be considered here since the Massachusetts Legislature has established the terms of the policy. The other three cases set forth in the annotation took a contrary position. We can concur with the sentiments expressed in the three other jurisdictions. Here it is conceded that the Colombo vehicle was insured up to the minimum requirements required by § 27-7-2.1. As noted earlier, the Blais' difficulty arises

from their inability to trigger the pain-and-suffering-compensatory provisions of the Colombo policy.

This court is sympathetic to the plight of the Blais family, but we must point out that protection against the uninsured motorist first achieved public policy status at the January 1962 session of Rhode Island's General Assembly, when the Legislature required motor vehicle insurers to make uninsured-motorist coverage available to their insured motorists. Thus, if there is to be relief from the plight encountered by the plaintiffs, it must come from the Legislature rather than from the judicial system.

MURRAY, J., did not participate.