DECISION
Before the Court in this products liability action is Plaintiffs' Motion for the Application of Rhode Island Law. The Defendants Davol, Inc. ("Davol") and C.R. Bard, Inc. ("Bard") (Collectively "Defendants") object to this motion. This Court afforded the parties an opportunity to be heard on February 3, 2011. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
The present matter involves litigation stemming from injuries allegedly sustained after a Davol-manufactured Composix Kugel Patch ("CK Patch") was implanted into Plaintiff Steven M. Ingram ("Mr. Ingram"), an Arizona resident. According to the complaint, on January 6, 2004, an Extra Large CK Patch was implanted to repair Mr. Ingram's hernia in an emergency room in Arizona. Then, on January 9, 2006, Mr. Ingram suffered several adhesions to the mesh of his CK Patch and underwent surgery to remove it in an Arizona hospital. At that time he also had a bowel resection as a result of a perforation of the bowel. *Page 2 
Plaintiffs then filed the instant case against Davol and Bard in Rhode Island, Davol's principal place of business. In their complaint, Plaintiffs asserted counts under the theories of negligence, strict products liability, and failure to warn. Specifically, the complaint alleges that Davol designed, initially manufactured, and distributed the CK Patches from its principal place of business in Cranston, Rhode Island.[1]
In their motion, Plaintiffs argue that this Court should apply Rhode Island law because the laws of Rhode Island and Arizona conflict, and the laws of Rhode Island have the most significant relationship to the claim. Plaintiffs present facts that Davol designed, initially manufactured, and first placed the CK Patch on the market from its principal place of business in Rhode Island. Given the possible choices of law — Rhode Island advocated by Plaintiffs and Arizona advocated by Defendants — Plaintiffs assert that Rhode Island is clearly the correct choice because it is the center of the relationship between the Defendants and Plaintiffs.
Conversely, Defendants contend that based on Plaintiffs' residence and the place of implantation and treatment, the relationship between Defendants and Plaintiffs is centered in Arizona. Moreover, Defendants contend that Rhode Island, as the location of Davol's headquarters, does not warrant the application of Rhode Island law because as the injury occurred in Arizona, it has a more significant interest in this case. Therefore, Defendants purport that Arizona law should apply to these claims. *Page 3 
 II Analysis A Constitutionally Minimum Connection
In Rhode Island, courts use an interest-weighing approach to determine the appropriate law to apply when several states have an interest in a matter and have conflicting laws. Oyola v.Burgos, 864 A.2d 624, 627 (R.I. 2005) (citing Woodward v.Stewart, 104 R.I. 290, 299-300, 243 A.2d 917, 923 (1968)). In this approach, courts must decide which "state `bears the most significant relationship to the event and the parties.'"Najarian v. National Amusements, Inc.,768 A.2d 1253, 1255 (R.I. 2001) (quoting Cribb v. Augustyn,696 A.2d 285, 288 (R.I. 1977)). As a threshold matter, this court must reconcile the possibility of using an interested state's law with the Full Faith and Credit, Due Process, and Equal Protection clauses of the Federal Constitution, which require that the forum has some rational basis for applying its laws to the matter. Woodward, 104 R.I. at 296, 243 A.2d at 921.
In this case, neither party contends that either Arizona or Rhode Island lacks a rational basis because both states have sufficient contacts with the instant matter. Davol's actions — specifically, its principal place of business, as well as the CK Patch's original manufacture, design, and corporate communications — occurred in Rhode Island. These facts constitute sufficient contacts between this case and Rhode Island. Arizona, as the location of Plaintiffs' residence and Mr. Ingram's injury and treatment, also has sufficient contacts to this matter. *Page 4 
 B Interest Weighing Analysis
A court need not engage in a choice-of-law analysis when no conflict-of law issue is presented. NationalRefrigeration, Inc. v. Standen Contracting Co., Inc.,942 A.2d 968, 973 (R.I. 2008). This Court, however, is aware of the evident conflict of laws between Rhode Island and Arizona in this case, including, but not limited to, significant differences in the approaches to the definition of an unreasonably dangerous product[2] and the failure to warn doctrine.[3]
As jurisdiction and venue are proper in Rhode Island, this state's choice of law provisions shall apply. Accordingly, this Court will employ an interest-weighing approach to determine which law to apply as several states have an interest in a matter. SeeOyola, 864 A.2d at 627 (citing Woodward,104 R.I. at 299-300, 243 A.2d at 923); Najarian,768 A.2d at 1255. The factors that a court must weigh in determining which law applies are "`(1) predictability of result; (2) maintenance of interstate and *Page 5 
international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law.'" Najarian,768 A.2d at 1255 (quoting Pardey v. Boulevard Billiard Club,518 A.2d 1349, 1351 (R.I. 1986)) (citing Restatement (Second)Conflict of Laws § 145(2) (1971)).
Specifically in a tort case, determining the forum with the most significant relationship to the claim requires a court to evaluate the following contacts: "`(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'"Id. (quoting Brown v. Church of the Holy Name ofJesus, 105 R.I. 322, 326-27, 252 A.2d 176, 179 (1969)) (citing Restatement (Second) Conflict of Laws § 145(2)).
 1 Application of Tort Specific Interest WeighingFactors a Place Where Injury Occurred
Plaintiffs argue that although Mr. Ingram's injury occurred in Arizona, this Court is not required to apply Arizona law because Rhode Island has abandoned the lex loci delicti rule. In response, Defendants aver that Arizona has the primary interest in this litigation because Arizona is undisputedly the location of the injury. Therefore, Defendants maintain Arizona law should apply. *Page 6 
The Rhode Island Supreme Court abandoned the doctrine of lexloci delicti[4] because "the interest-weighing approach to conflict of law cases is indeed the better rule, and justice will be more equitably administered if the Rhode Island courts apply that rule to tort conflicts cases coming before them."Woodward, 104 R.I. at 299, 243 A.2d at 923. Nevertheless, in a personal injury matter, "`the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship. . . .'"Najarian, 768 A.2d at 1255 (omission in original) (quotingBlais v. Aetna Casualty Surety Co.,526 A.2d 854, 856-57 (R.I. 1987)).
Defendants contend that there is no other "particular issue" that gives Rhode Island a more significant relationship with this matter. In Najarian and Taylor v. Massachusetts FloraRealty, Inc., the Rhode Island cases relied upon by Defendants, [5] the place of the injury played an important role in the interest-weighing approach. See Najarian,768 A.2d at 1255 (finding that the place of the injury and the conduct allegedly causing the injury occurred in Massachusetts and ultimately finding that Massachusetts law applied); Taylor v.Massachusetts Flora Realty, Inc., 840 A.2d 1126, 1129 (R.I. 2004) ("That plaintiff's injury occurred in Massachusetts is the most compelling factor in our choice of law inquiry."). The facts in these cases, however, differ from those in the present matter because both deal with plaintiffs who fell on the defendant's property. See *Page 7 Najarian, 768 A.2d at 1255 (involving a plaintiff who fell on a Rhode Island business defendant's Massachusetts property);Taylor, 840 A.2d at 1129 (involving a plaintiff who fell in a Massachusetts-Rhode Island parking lot on the Massachusetts side and was visiting a salon in Massachusetts at the time of the fall). Although Mr. Ingram sustained his injury in Arizona, he was not injured as a result of Arizona property.
This Court acknowledges the significance of the place where the injury occurred, Arizona, to this choice of law analysis.See Najarian, 768 A.2d at 1255. Defendants, however, "overlook an essential feature of our conflict of laws jurisprudence: such questions are issue specific."Oyola, 864 A.2d 624, 628 (R.I. 2005) (citingWoodward, 104 R.I. at 293, 243 A.2d at 919-20; Restatement (Second) Conflict of Laws § 145(1)). As a result, this Court cannot adopt Defendants' assertion that Arizona, as the place of the injury, is completely determinative in this choice of law analysis, but will treat it as a factor within the interest-weighing analysis.
 b Location of Conduct Causing the Injury
Plaintiffs argue that significant contact with Rhode Island exists in this case because Davol designed, initially manufactured, and first placed the CK Patch on the market from its headquarters in Rhode Island. Additionally, Plaintiffs maintain that Davol corporate executives drafted their FDA communications, the recall notice, and announcements regarding two recall expansions. These communications were approved in New Jersey. Davol also conducted all sales force oversight and training management from Rhode Island headquarters. Additionally, Plaintiffs contend that the Davol Surgeon Training Program is managed by personnel in Davol's Rhode Island headquarters. *Page 8 
In response, Defendants contend that this emphasis on Davol's alleged headquarter operations, none of which is unique from any other company's headquarter operations and none of which involves the Plaintiff, is not determinative of the choice of law analysis. It further argues that if Plaintiffs' interpretation is to apply, that rule would not promote the predictability of results, maintain interstate or international order, simplify the judicial task, or advance the forum government's interest. Defendants also maintain that the CK Patch at issue was not manufactured in Rhode Island.
In La Plante v. American Honda Motor Co., Inc., a products liability action, the First Circuit Court found that the tortious conduct allegedly giving rise to the plaitniff's injuries occurred in Japan where the subject product was designed and its warnings devised. 27 F.3d 731, 741 (1st Cir. 1994) (citing Price v. LittonSys., Inc., 784 F.2d 600, 604 (5th Cir. 1986)).[6] Similar toLa Plante, in this case, the alleged tortious conduct causing the injury took place in Rhode Island. See id. Therefore, Rhode Island also has a significant relationship with this litigation. See id.; see also McLennan v.American Eurocopter Corp., Inc.,245 F.3d 403, 426 (5th Cir. 2001) (finding that Texas had a significant interest in a products liability matter because the marketing and manufacturing of the allegedly defective product was the conduct causing this injury and occurred in Texas). As in the analysis of the previous factor, this Court rejects the invitation to decide this conflict-of-law analysis on this sole issue. Instead, this Court is mindful that *Page 9 
Rhode Island's significant interest as a result of this factor is one within the analysis that "combine[s] a `workable brevity' with a `reasoned analysis.'" Woodward,104 R.I. at 300, 243 A.2d at 923.
 c The Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties
The relative importance of these considerations within this factor varies with the nature of the interest affected. Restatement (Second) Conflicts of Law § 145 cmt. e. Specifically, "[w]hen the interest affected is a person's interest in his reputation . . . domicile, residence, and nationality are of greater importance than if the interest is a business or financial one [where] the place of business is a more important contact." Id. In this case, Plaintiffs' domicile and residence is Arizona; Davol's residence and principal place of business is Rhode Island; and Bard's residence and principal place of business is New Jersey. As this case involves both personal interests and business interests, this factor weighs in favor of the application of both Arizona and Rhode Island law.
 d Place Where the Relationship, if Any, Between the Parties Is Centered
Concerning the last tort-specific factor, The First Circuit has noted that in a products liability action "there being no `relationship' between the parties in the ordinary sense of the word, this factor is unhelpful in making a choice-of-law determination." La Plante, 27 F.3d at 741. Similarly, in this case, this Court finds no evidence of any actual, arms-length relationship between Plaintiffs and the Defendants. Mr. Ingram came into *Page 10 
contact with the CK Patch when a surgeon implanted it as a result of a hernia. As such, this fourth specific torts factor is not useful to this Court's choice of law analysis.
 2 Application of General Interest-Weighing Factors
The choice of law analysis may not always turn on the quantity of contacts, but rather, the qualitative nature of those contacts affected by the following factors: "(1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law."Id. (citing Brown, 252 A.2d at 178; Blais,526 A.2d at 856); see also Pardey,518 A.2d at 1351 (citation omitted).
As to the first and second factors — the predictability of results and maintenance of interstate order — in Najarian, our Supreme Court noted that the place where the injury occurred should weigh strongly in favor of predictability in applying that forum's law. 768 A.2d at 1255. Nevertheless, as explained previously,Najarian was a straightforward personal injury case wherein the plaintiff fell inside a Massachusetts movie theater.See id. As the patron-plaintiff and the movie theater should have reasonably expected that an injury occurring in its Massachusetts theater would be governed by Massachusetts premises liability laws, it was clear that those laws should apply.Id.
In this case, Mr. Ingram had his CK Patch implanted in Arizona; he, however, filed the instant law suit in Rhode Island. Additionally, Defendants, who sell their products across the United States, could not have expected Arizona law to apply to the exclusion of all other states where their products were available.See La Plante, 27 F.3d at 742 (finding that "Honda, a large multi-national corporation, cannot argue *Page 11 
convincingly that it expected Colorado law to apply to a case arising from a product manufactured in Japan and involving a Rhode Island citizen [who was injured when riding the ATV in Fort Carson, Colorado] simply because the product was originally sold in Colorado."). Accordingly, this Court finds that the application of Rhode Island law is the most predictable result and will maintain interstate order.
Examining the other general factors in the most significant relationship analysis, this Court acknowledges that the judicial task would be simplified by applying Rhode Island law; the application of Arizona law, however, is not an insurmountable burden. Additionally, both forums have a governmental interest in the litigation. Arizona's interest lies in protecting its residents from defective products. Rhode Island has a significant interest in the litigation as a result of a state's strong interest in regulating the conduct of business operations within its borders and in encouraging safe design. See Mitchell v. Lone StarAmmunition, Inc., 913 F.2d 242, 250 (5th Cir. 1990).
Although the place of injury is Arizona, Rhode Island has a significant interest in this litigation because of Davol's corporate, marketing, training, and design functions in Rhode Island. Plaintiffs' complaint was brought as a result of these alleged actions. Although both Arizona and Rhode Island have an interest in this litigation, the scales tip in favor of Rhode Island because of the actions within its borders, the predictability of results, and the maintenance of interstate order.[7] Therefore, this Court finds that the state with the "most significant relationship" to this case is Rhode Island. *Page 12 
 III Conclusion
For the foregoing reasons, this Court finds that Rhode Island law applies to the above-titled case. Counsel shall prepare an appropriate order for entry.
[1] Davol's headquarters have recently moved to Warwick, Rhode Island.
[2] Rhode Island adheres to the "consumer expectation test," which provides that a product is unreasonably dangerous if "the defect in the product establishes a strong likelihood of injury" to a consumer using a product in the way that it was intended to be used.Castringnano v. E.R. Squibb Sons, Inc.,546 A.2d 775, 779 (R.I. 1988) (quoting Ritter v. NarragansettElec. Co., 109 R.I. 176, 191, 283 A.2d 255, 263 (1971)). In contrast, Arizona employs a risk/benefit analysis to determine if a design defect is "unreasonably dangerous." Dart v. Wiebe Mfg.,Inc., 709 P.2d 876, 879 (Ariz. 1985) (citingByrns v. Riddell, Inc., 550 P.2d 1065, 1068 (Ariz. 1976)). In Arizona, courts apply the "consumer expectation test" in manufacturing defect cases, not in design defect cases because its Supreme Court found that test failed "to provide an adequate legal standard in [that type of case]." Id. at 878.
[3] Arizona recognizes the learned intermediary doctrine which provides that "`the manufacturer's duty to warn is ordinarily satisfied if a proper warning is given to the specialized class of people that may prescribe or administer the product.'" Dole FoodCo., Inc. v. North Carolina Foam Indus., Inc.,935 P.2d 876, 880 (Ariz. App. 1996) (quoting Davis v. CessnaAircraft Corp., 893 P.2d 26, 38 (Ariz. App. 1994)). Rhode Island has not adopted that doctrine.
[4] Lex Loci Delicti refers to the application of the "law of the place where the tort or other wrong was committed." Black's Law Dictionary (8th ed. 2004).
[5] Defendants also rely on a number of cases from other jurisdictions to support the rationale that where the injury occurred will govern the choice of law. This Court acknowledges the importance of this factor, but also that this is a fact-driven analysis, and in this case, Mr. Ingram was injured in Arizona but chose to file in Rhode Island. See Oyola,864 A.2d 624, 628 (R.I. 2005).
[6] This Court recognizes the divergence of opinion on this matter as evidenced in Byers v. Lincoln Elec. Co. See607 F. Supp. 2d 840, 851 (R.I. 2009) ("In essence, then, in a product liability case for failure to warn, the first factor and second factor in a choice-of-law analysis are equivalent."). Nevertheless, this Court will consider the jurisdiction in which Defendant designed the product and made the recall decision as the location where the conduct causing the injury occurred because the claims in this case stem from those alleged actions.
[7] Moreover, this Court's decision is further colored by the proposition that
 "[g]enerally, a court will assume that a case is to be governed by the laws of the forum unless it is expressly shown that a different law applies, and in case of doubt as to whether the lex loci or the lex fori should govern, the court will naturally prefer the laws of its own state or country." 8 Am. Jur. 2d Conflicts of Law § 3. *Page 1