**Allen JOHNSON, Administrator D/B/N C.T.A. of the Estate of Eleanor Brazelton, Appellee,**

v.

**UNITED STATES of America, Appellant.**

No. 83–1759.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1984.

Decided Aug. 22, 1984.

Thomas A. Gick, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., John P. Alderman, U.S. Atty., Roanoke, Va., Michael L. Paup, Robert A. Bernstein, Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellant.

John W. Flora, Harrisonburg, Va. (Donald E. Showalter, Ronald D. Hodges, Wharton, Aldhizer & Weaver, Harrisonburg, Va., on brief), for appellee.

Before WINTER, Chief Judge, and HALL and SPROUSE, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

The United States appeals from a judgment entered against it based upon the ruling that the plaintiff estate was entitled to an estate tax deduction under § 2053 of the Internal Revenue Code of 1954, 26 U.S.C. § 2053, which had erroneously been disallowed, and hence was entitled to a tax refund to the extent that it had overpaid federal estate taxes as a result of the disallowance. We conclude that on the present record the district court erred in awarding the refund. We reverse and remand for further proceedings.

## I.

Eleanor Brazelton died testate on September 10, 1975. Though her husband, Terrill Brazelton, survived her, she left her entire estate to her foster son, Earl Shifflett. Her estate consisted primarily of Beaulassie Farm in Shenandoah County, Virginia, on which Earl Shifflett lived and worked.

Just prior to Eleanor Brazelton's death, the Internal Revenue Service (IRS) had sent a notice of deficiency to her and her husband proposing $481,478.73 in tax deficiencies and $24,073.93 in negligence penalties relating to their joint income tax returns for the taxable years 1968 through 1971. The tax deficiencies were attributable solely to the income of Terrill Brazelton and not to the income of Eleanor Brazelton. Terrill Brazelton ultimately reached a settlement with the IRS in which he and the

estate of Eleanor Brazelton were declared jointly liable for tax deficiencies of $278,-277.00, penalties of $13,918.85, and interest. Payment of the agreed amount was not immediately forthcoming, and in June 1977, the IRS recorded a lien against Beaulassie Farm, as property of the estate of Eleanor Brazelton. On July 25, 1977, the IRS mailed a final notice before seizure of Beaulassie Farm to Terrill Brazelton and Eleanor Brazelton's estate.

In order to prevent the IRS from selling Beaulassie Farm, Terrill Brazelton, Earl Shifflett, and the administrator of the estate made an agreement among themselves how to make payment to the IRS. Terrill Brazelton agreed to pay $261,250.00 of the tax liability and to release all claims he might have against Beaulassie Farm. The estate agreed to release all rights to contribution that it might have against him and to pay the remaining $179,865.48 of the tax liability. The estate raised the money for its share of the payment by mortgaging Beaulassie Farm.

In September 1978, Terrill Brazelton filed suit in a Virginia state court against the estate and Earl Shifflett to obtain reimbursement for part of the taxes paid by him. The estate and Shifflett counter-claimed for the amount of tax liabilities paid by the estate, contending that their prior agreement as to payment was invalid. The state court found that the estate and Shifflett had effectively relinquished their rights of contribution against Terrill Brazelton, and accordingly found for Terrill Brazelton on the counterclaim. *Terrill Brazelton v. Allen D. Johnson, et al.,* Order-Law No. 368 (Circuit Court of Shenandoah County, Virginia, May 21, 1980).

The estate claimed an estate tax deduction under 26 U.S.C. § 2053(a) for the portion of the joint tax liability of Terrill and Eleanor Brazelton paid by it. The IRS disallowed the deduction and assessed a deficiency of $56,336.00 plus interest, which was paid by the estate. The IRS disallowed a claim for a refund, and on March 3, 1981, the estate filed suit in district court.

The district court decided the case on the basis of stipulated facts. It determined that the estate was entitled to a refund, and granted summary judgment.

## II.

This case requires us to interpret 26 U.S.C. § 2053(a)[1] and its accompanying regulation, 26 C.F.R. § 20.2053–6(f).[2] In

---

1. 26 U.S.C. § 2053(a) provides in relevant part:
   (a) *General Rule*
   For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

   *    *    *    *    *    *

   (3) for claims against the estate

   *    *    *    *    *    *

   as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

2. 26 C.F.R. § 20.2053–6(f) provides in relevant part:
   (f) *Income Taxes*—Unpaid income taxes are deductible if they are on income properly includible in an income tax return of the decedent for a period before his death.

   *    *    *    *    *    *

   If income received by a decedent during his lifetime is included in a joint income tax return filed by the decedent and his spouse, or by the decedent's estate and his surviving spouse, the portion of the joint liability for the period covered by the return for which a deduction will be allowed is the amount for which the decedent's estate would be liable under local law, as between the decedent and his spouse, *after enforcement of any effective right of reimbursement or contribution.* In the absence of evidence to the contrary, the deductible amount is presumed to be an amount bearing the same ratio to the total joint tax liability for the period covered by the return that the amount of income tax for which the decedent would have been liable if he had filed a separate return for that period bears to the total of the amount for which the decedent and his spouse would have been liable if they had both filed separate returns for that period. Thus, in the absence of evidence to the contrary, the deductible amount equals: Decedent's separate tax ÷ Both separate taxes × Joint tax.
   However, the deduction cannot in any event exceed the lesser of—
   (1) The decedent's liability for the period (as determined in this paragraph) reduced by the amounts already contributed by the decedent toward payment of the joint liability, or

assessing the deficiency against the estate, the IRS contended that the amount of Terrill and Eleanor Brazelton's joint tax liability that the estate had paid was not properly deductible because none of the liability was attributable to Eleanor Brazelton and the amount that the estate had actually paid would have given the estate rights of contribution against Terrill Brazelton.[3] The IRS contended that the agreement between Terrill Brazelton, Earl Shifflett and the estate in which the estate relinquished its rights of contribution against Terrill Brazelton for the tax payment did not alter the fact that the original tax payment did give rise to a right of contribution against Brazelton and thus was not a deductible payment under the language of 26 C.F.R. § 20.2053–6(f), which permits deduction of payments of joint tax liability only in an "amount for which the decedent's estate would be liable under local law .... after enforcement of any effective right of reimbursement or contribution."

The estate, for its part, maintained that it did not have an *effective* right of contribution against Terrill Brazelton because it had relinquished that right in order to secure Terrill Brazelton's agreement to pay at least part of the joint tax liability, delinquency in which threatened the estate's major asset, Beaulassie Farm, with sale to satisfy the liability. Absent an effective right of contribution, the estate contended, the entire amount of its payment on the joint tax liability was deductible. The es-

(2) If there is an enforceable agreement between the decedent and his spouse or between the executor and the spouse relative to the payment of the joint liability, the amount which pursuant to the agreement is to be contributed by the estate toward payment of the joint liability.
(Emphasis added.)

\*　\*　\*　\*　\*　\*

**3.** As the district court noted, Virginia has long recognized the equitable doctrine of contribution. *See Brown v. Hargraves,* 198 Va. 748, 96 S.E.2d 788 (1957); *Houston v. Bain,* 170 Va. 378, 196 S.E. 657 (1938). *See also American Employers' Insurance Co. v. Maryland Casualty Co.,* 218 F.2d 335, 338–339 (4 Cir.1954). The general principle of contribution has been applied in

tate was successful in this argument before the district court.

We think that neither the position adopted by the district court nor that urged on us by the government is correct.

▮ It is clear that the district court's approach cannot be sustained. Essentially, the district court found that whatever amount of the joint tax liability the estate paid would have been deductible so long as the estate in paying it had relinquished its rights of contribution against Terrill Brazelton. While there is no evidence of collusion in the present case, to adopt the rule utilized by the district court would create a great incentive and opportunity for tax avoidance by means of collusive arrangements to shift as large an amount as possible of a joint income tax liability between a living and deceased spouse onto the deceased spouse's estate. More importantly, the approach adopted by the district court conflicts with the provisions of the regulation. Even though the estate, for whatever reason, chose to relinquish its rights of contribution against Terrill Brazelton, its undertaking to pay and payment of a portion of Terrill and Eleanor Brazelton's joint tax liability would have, in the absence of the relinquishment thereof, given its rights of contribution under Virginia law. The relevant portion of 26 C.F.R. § 20.2053–6(f) provides:

.... in a joint income tax return filed by the decedent and his spouse, or by the decedent's estate and his surviving

circumstances like those alleged in the present case, where one jointly liable for income taxes has paid an amount in excess of her fair share. *See Phillips-Jones Corp. v. Parmley,* 302 U.S. 233, 236, 58 S.Ct. 197, 198, 82 L.Ed. 221 (1937) (stockholder who received his pro rata share of the corporate assets upon dissolution, and has been compelled by transferee to pay income taxes owed by the corporation, held entitled to contribution from his co-stock holders).

Before us, neither party disputed the applicability of the right of contribution to this case. We agree that the principle is applicable. However, as stated later in the text, we leave the question of the amount to which the estate might be entitled in contribution for initial resolution by the district court.

spouse, the portion of the joint liability for the period covered by the return for which a deduction will be allowed is the amount for which the decedent's estate *would be liable* under local law, as between the decedent and his spouse, *after enforcement of any effective right of reimbursement or contribution.* (Emphasis added.)

By the terms of the regulation, therefore, the amount covered by these rights of contribution, whether exercised or not, must be excluded from any deduction claimed by the estate. Whether rights of contribution are enforced and, it follows, whether they are retained in the first place, makes no difference to calculating the allowable deduction for liabilities of the estate under § 20.2053–6(f).[4]

■ On the other hand, the government's position is untenable insofar as it suggests that because the estate, in the absence of the agreement with Terrill Brazelton, had rights to contribution from Terrill Brazelton under state law, it cannot deduct any amount of the payment of the joint tax liability for which contribution could have been sought from Terrill Brazelton. The regulation, 26 C.F.R. § 20.2053–6(f), specifies that amounts paid by an estate in satisfaction of joint tax liability may be deducted for estate tax purposes to the extent that they are amounts "for which the decedent's estate would be liable under local law .... after enforcement of any

*effective* right of reimbursement or contribution." The proviso that to limit deductibility, the right of contribution must be "effective" has been interpreted to mean that the party from whom contribution is sought must be solvent. *See McClure's Estate v. United States,* 288 F.2d 190, 192, 153 Ct.Cl. 226 (1961). The government's position makes no provision for an inquiry into Terrill Brazelton's solvency; rather, the government would maintain that inasmuch as the estate bargained away its right to contribution against Terrill Brazelton, the amount of joint tax liability that it paid was presumptively nondeductible. The government's position thus also contravenes the provisions of 26 C.F.R. § 20.-2053–6(f).

■ Correct disposition of this case requires further factual inquiry than was made by the district court. Under state law, the estate had a right of contribution against Terrill Brazelton, which would have been an *effective* right of contribution *if* Terrill Brazelton had sufficient assets to meet it. There are two issues that are determinative regarding the deductibility of the payment made by the estate to satisfy the joint tax liability. The first is the extent of the estate's right to contribution against Terrill Brazelton under applicable local law. The district court, the parties and we are in agreement that there was a right of contribution.[5] *See* n. 3, *supra.* It

---

**4.** The estate makes much of the fact that here, the agreement between Terrill Brazelton and the estate in which the estate relinquished its rights of contribution had its genesis in the decision of the IRS to pursue collection of the joint income tax liability by proceeding against property owned wholly by the estate. The estate thus argues that the agreement between it and Terrill Brazelton was not a "voluntary" one on its part, but was only motivated by the need to rescue its property in the face of imminent sale by the IRS.

The "involuntary" nature of its relinquishment of its contribution rights, the estate contends, should result in the conclusion that it never had an "effective" right of contribution. We cannot accept the argument. Had the IRS seized and sold Beaulassie Farm to satisfy the outstanding joint income tax liability, the estate would still have had a right of contribution against Terrill Brazelton for monies thus taken

by the IRS from the assets of the estate. Under the terms of § 20.2053–6(f), therefore, the value of the farm, even if seized and sold by the IRS, would only be deductible for the purposes of determining estate tax to the extent that the estate had no effective recourse against Terrill Brazelton. To accept the estate's argument, on the other hand, would mean that the estate of a deceased spouse could reverse this result simply by relinquishing its rights of contribution against the surviving spouse. We find no basis to establish such an anomalous exception to the operation of the regulation.

**5.** We note that the decision rendered by the Circuit Court of Shenandoah County, Virginia, in *Terrill Brazelton v. Allen D. Johnson, et al.,* Order-Law No. 368 (May 21, 1980) does not determine this issue. The court there merely held that the estate and Earl Shifflett had relinquished whatever rights of contribution they

must be determined, however, whether the right of contribution extended to all or only part of the amount of the payment. The second issue is whether, had the estate pursued any right of contribution that it may have had at the time of its creation, Terrill Brazelton would have had adequate resources to meet the claim for contribution. If Terrill Brazelton had inadequate resources to meet all or part of the claim for contribution, then to that extent the right to contribution would have been ineffective and the estate's payment[6] to that extent deductible.[7]

We reverse the judgment of the district court and remand the case to it for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

may once have had against Terrill Brazelton, and thus that they would not be heard to advance claims for contribution, whether they ever existed or not, at the time of the suit. The issue with regard to deductibility of the estate's payment on the joint tax liability, however, is not whether the estate presently retains enforceable rights of contribution against Terrill Brazelton, but whether, at the time of the payment of the liability, local law operated to confer a right of contribution.

6. We note that the amount that the estate actually paid sets the upper limit on the amount of the joint tax liability that the estate could deduct because of the provision of 26 C.F.R. § 20.2053–6(f) that:

> .... the deduction cannot in any event exceed the lesser of—
> (1) The decedent's liability for the period (as determined in this paragraph) reduced by the amounts already contributed by the decedent toward payment of the joint liability, or
> (2) If there is an enforceable agreement between the decedent and his spouse or between the executor and the spouse relative to the payment of the joint liability, the amount which pursuant to the agreement is to be contributed by the estate toward payment of the joint liability.

Thus, even if the estate was liable for up to the entirety of the joint tax liability and Terrill Brazelton was at the time insolvent, the estate could not in any event deduct more of the joint tax liability than it actually paid pursuant to the agreement with Terrill Brazelton. Thus, even if the estate's exposure under local law extended to the whole amount of the joint tax liability and Terrill Brazelton had to borrow to pay the portion of the joint tax liability that in the agreement he undertook to pay, the estate could not deduct the whole of the joint tax liability on the basis that it never had an "effective" right of contribution against Terrill Brazelton.

7. In return for the estate's agreement to pay a portion of the joint tax liability and relinquish any resulting rights of contribution, Terrill Brazelton relinquished certain potentially valuable claims against the property of the estate. In particular, Terrill Brazelton agreed to relinquish, *inter alia*, "curtsy [sic] interest, marital share, or any other interest which he may have [in property of the estate]" and "any claim, right or demand that he may have to bring suit or action ..." Counsel for the estate represented to us that any and all of these claims were time-barred under Virginia law and thus of no value. We express no view as to this matter, but note only that if Terrill Brazelton did give

valuable consideration for the estate's agreement to pay a portion of the joint tax liability, this might operate to indicate a partial effective exercise by the estate of rights of contribution that it might have had against Terrill Brazelton.

In oral argument, counsel for the estate also suggested that to the extent that the agreement between the estate, Shifflett, and Terrill Brazelton might be construed as a settlement of curtesy rights or other statutory interests held by Terrill Brazelton in lieu thereof, the amount paid by the estate to Terrill Brazelton would qualify for the marital deduction under 26 U.S.C. § 2056 and applicable regulations. The relevance of this observation to disposition of the case rests on a preliminary determination of the nature of the agreement, as outlined in the paragraph above. Such a determination properly rests with the district court. Accordingly, the correctness of the proposition advanced by counsel is not presently before us and we express no view thereon.