Arthur H. La PLANTE,
Plaintiff, Appellee,

v.

AMERICAN HONDA MOTOR CO.,
INC., Defendants, Appellants.

Nos. 93–2314, 94–1015.

United States Court of Appeals,
First Circuit.

Argued April 8, 1994.

Decided June 29, 1994.

Andrew L. Frey, with whom Evan M. Tager, Adam C. Sloane, Mayer, Brown & Platt, Washington, DC, Gerald C. DeMaria, and

Higgins, Cavanagh & Cooney, Providence, RI, were on brief, for defendants.

Mark B. Decof, with whom Vincent T. Cannon, Howard B. Klein, Decof & Grimm, Providence, RI, were on brief for plaintiff.

Hildy Bowbeer, Lezlie Ott Marek, Darin D. Smith and Bowman and Brooke, Minneapolis, MN, on brief for Product Liability Advisory Council, amicus curiae.

Before BREYER,* Chief Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

Plaintiff-appellee Arthur LaPlante was rendered quadriplegic from a fall sustained while riding an all-terrain vehicle (ATV) designed, manufactured, and distributed by defendants-appellants Honda R & D Co., Ltd., Honda Motor Co., Ltd., and American Honda Motor Co., Inc. (collectively "Honda"). A jury found Honda liable and awarded plaintiff $9,652,000 in compensatory damages. This amount was reduced to $8,204,200 to account for plaintiff's comparative negligence. In a separate proceeding, the district court granted judgment as a matter of law for Honda on plaintiff's claim for punitive damages. Honda appeals from the judgment of liability and compensatory damages. Plaintiff cross-appeals on its punitive damages claim.

Finding reversible error, we vacate the judgment of liability and remand for a new trial as to all liability issues. If Honda is found liable on retrial, the award of damages stands. As for plaintiff's cross-appeal, the judgment of the district court is affirmed.

## I.

### BACKGROUND

On Saturday, March 11, 1989, the course of Arthur LaPlante's life was dramatically and irreversibly altered. On that morning plaintiff, a twenty-four year-old army mechanic stationed at Fort Carson, Colorado, and three friends, Kelly Kallhoff, Randy Leib,

and Mike Mohawk, ventured to nearby Pikes Peak in order to ride Kallhoff's three-wheel ATV, a 1982 Honda ATC200. This ATV is a three-wheeled motorized vehicle intended for off-road use. The vehicle has handlebar steering and large low-pressure tires, two in the rear, and one in front.

Plaintiff, who had never before ridden an ATV, was the third to ride after Kallhoff and Leib. After climbing to the top of a knoll, plaintiff began to descend at a speed of 5–10 m.p.h. When plaintiff was unable to negotiate a left-hand turn onto a twelve foot wide dirt road, he fell over a steep embankment and broke his neck, resulting in permanent paralysis from the neck down.

On January 11, 1991, plaintiff, who lived in Rhode Island before enlisting in the Army in 1983 and returned there after the accident, commenced this diversity action in the United States District Court for the District of Rhode Island. The complaint delineated six causes of action: (1) breach of warranty; (2) false advertising; (3) negligent failure to advise how to operate the vehicle; (4) negligent failure to warn; (5) strict liability design defect; and (6) willful, wanton and reckless conduct (i.e., punitive damages). The trial was bifurcated so that the issue of punitive damages could be tried after the issues of liability and compensatory damages. The parties agree that the substantive law of Rhode Island governs the liability issues in this action.

A twenty-three day trial on liability and compensatory damages began in July 1993. At the close of plaintiff's case Honda moved for judgment as a matter of law. Only the claims for negligent failure to warn and strict liability design defect survived the motion. Ultimately the jury found Honda liable on these two claims, and awarded plaintiff $3,652,000 for medical expenses and lost wages, and $6,000,000 for physical injuries and pain and suffering. The jury also found that plaintiff was comparatively negligent, and reduced his award by fifteen percent.

---

* Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion.

The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

The district court denied Honda's motions for postjudgment relief.

The punitive damages phase of this action commenced on September 16, 1993. On the same day, at the close of plaintiff's evidence, the district court granted Honda's motion for judgment as a matter of law. These cross-appeals ensued.

## II.

### DISCUSSION

### A. *Rhode Island's Subsequent Alteration Statute*

■ Honda argues that the district court committed reversible error by not instructing the jury on the affirmative defense provided by Rhode Island's "subsequent alteration" statute, R.I.Gen.Laws § 9–1–32 (1985).

Rhode Island law provides that "[n]o manufacturer or seller of a product shall be liable for product liability damages *where a substantial cause of the injury*, death, or damage was a subsequent alteration or modification." R.I.Gen.Laws § 9–1–32(b) (emphasis added). The statute defines "subsequent alteration or modification" as

> an alteration or modification of a product made subsequent to the manufacture or sale by the manufacturer or seller which altered, modified, or changed the purpose, use, function, design, or manner of use of the product from that originally designed, tested or intended by the manufacturer, or the purpose, use, function, design, or manner of use or intended use for which such product was originally designed, tested or manufactured.

*Id.* § 9–1–32(a)(2). Honda contends that it presented evidence that the ATV ridden by plaintiff was altered or modified after its original sale, and therefore the trial court's failure to instruct the jury in accordance with § 9–1–32 was reversible error. In support of its position Honda points to evidence that, at the time of the accident, the ATV's front brakes were inoperable, its rear brakes were faulty, its right rear tire was overinflated, its front forks were bent, and it pulled to the right.

■ Plaintiff's response is fourfold. First, he maintains that "lax maintenance" cannot constitute a "subsequent alteration or modification" under the statute. Rather, plaintiff insists that § 9–1–32 was intended to "provide a defense when someone has deliberately altered a machine...." Next, he argues that the statute merely codified comment g of Section 402A of the Restatement (Second) of Torts. Third, plaintiff contends that the jury charge adequately apprised the jurors of Rhode Island law. Finally, he argues that any error was harmless because Honda failed to present sufficient evidence that any of the alleged subsequent alterations was a substantial cause of plaintiff's injuries.

With respect to the scope of the statute, we have been unable to find any support for plaintiff's contention that the scope of § 9–1–32 is limited to deliberate alterations, such as the removal of safety guards, and does not reach "alterations" or "modifications" that have resulted from inadequate maintenance. It is well settled under Rhode Island law that "[i]n the event that a statute is unambiguous, it is necessary for this court to apply its terms literally." *Keenan v. Vose*, 634 A.2d 866, 868 (R.I.1993); *see also Costello v. American Univ. Ins. Co.*, 633 A.2d 260 (R.I. 1993) (where statute "has a plain and unambiguous meaning ... this court is bound to construe the statute in accordance with that meaning"); *Levesque v. Rhode Island Dep't of Transp.*, 626 A.2d 1286, 1289 (R.I.1993) (when statute is clear and unambiguous on its face courts "must give the words of the statute their plain and obvious meaning"). Here, plaintiff's proposed limitation directly contradicts the unambiguous and broad language of the statute. No exception has been drawn by the Rhode Island legislature for alterations resulting from inadequate maintenance as opposed to deliberate changes, and we can find no principled reason for reading such an exception into the statute.

Several states have enacted comparable statutes that specifically include "failure to observe routine maintenance" within the meaning of subsequent alteration or modification. *See, e.g.*, Ky.Rev.Stat.Ann. § 411.-320(1) ("product alteration or modification shall include failure to observe routine care

and maintenance, but shall not include ordinary wear and tear"); N.C.Gen.Stat. § 99B–3 (same); *see also Lamb By Shepard v. Sears, Roebuck & Co.*, 1 F.3d 1184, 1188 (11th Cir.1993) (under Georgia, law failure to observe routine care and maintenance can constitute a material alteration or modification insulating defendant from liability for defective design). We have failed, however, to uncover a single statute that excludes inadequate maintenance from the category of subsequent alteration or modification for purposes of this defense. Finally, given the apparent purpose of § 9–1–32, *i.e.,* to protect manufacturers from unanticipated risks created by alterations or modifications occurring after a product leaves their control, we can see no reason why the Rhode Island legislature would provide a defendant with a complete defense where an ATV owner disconnected his front brakes, but not where the front brakes were inoperative due to the owner's failure to perform routine maintenance.

■ Next, plaintiff argues that § 9–1–32 merely codifies the essence of comment g to Section 402A of the Restatement (Second) of Torts which provides, in pertinent part, that "[t]he seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed." Plaintiff points to no language in § 9–1–32 to support this argument. Rather, plaintiff relies solely upon the presence of § 9–1–32 in two string citations, *i.e.,* Model Uniform Product Liability Act § 112(D), analysis (1979) (citing § 9–1–32 among statutes that have "enacted the essence of … comment [g] into law"); *Robinson v. Reed–Prentice Div.*, 49 N.Y.2d 471, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440, 443 (1980) (citing § 9–1–32 for proposition that "[s]ubsequent modifications of a product from its original condition by a third party which render a safe product defective are not the responsibility of the manufacturer"), as support for this statutory interpretation.

The plain meaning of § 9–1–32 simply does not support the proposition for which it is cited by either of the above sources. Neither authority explains the inclusion of § 9–1–32 in its respective string citation, nor does the text of the statute bear even a modest resemblance to comment g of the Restatement. The statute means what it says and must be applied. Plaintiff's attempt to limit the statute's breadth by relying on these two citations is unavailing.

■ The next question is whether the jury charge was deficient. We examine jury instructions with an eye towards determining if "they adequately explained the law or 'whether they tended to confuse or mislead the jury on controlling issues.'" *Davet v. Maccarone*, 973 F.2d 22, 26 (1st Cir.1992) (quoting *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 353 (1st Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990)). The judge's instructions on strict liability were that the plaintiff must prove, *inter alia,* that the product was defective, and "that the defect existed at the time the product left the Defendant's hands." In elaborating on the latter point, the judge stated:

The manufacturer or seller is not responsible for defects resulting from changes made to its product by other persons over whom it had no control after the product left the Defendant's possession.

Therefore, in order for the Plaintiff to prevail on his strict liability claim, the Plaintiff must prove that the defect that caused his injuries existed at the time the product left the Defendant's control. That does not necessarily mean that the product must have been in exactly the same condition at the time of the injury that it was when it left the Defendant's control. What it does mean is that the particular defect for which the Plaintiff seeks to hold the manufacturer responsible, must have existed at the time the product left the Defendant's control.

Trial Transcript of August 19, 1993 at 12–13. The judge then instructed the jury that the plaintiff was required to prove that the defect proximately caused his injuries:

That does not mean that a defect must be the only or the last cause of an injury in order to be considered a proximate cause. It may be considered a proximate cause if it operates together with some other contemporaneous cause to produce the injury.

In such cases, both causes may be considered proximate causes. If the two of them act together to produce the injury, you could have two proximate causes.

[A] defect must be, at least, a substantial contributing factor in producing the injury in order for it to be considered a proximate cause of that injury. In other words, there must be a reasonable connection between the defect and the injury that is being claimed.

*Id.* at 14.

■ Although consistent with the prevailing common law rule governing strict liability design defect actions in Rhode Island, *see Ritter v. Narragansett Elec. Co.*, 109 R.I. 176, 283 A.2d 255, 262–63 (1971), the judge's instructions directly contradict § 9–1–32. Under the statute, where a subsequent alteration or modification to a product is a "substantial cause" of a plaintiff's injuries, the defendant is completely immune from a products liability claim even if the product was defective at the time it left the defendant's control, and the defect was a proximate cause of the plaintiff's injuries. Despite the evidence in this case that changes had been made to the ATV between the time of its initial sale and the time of plaintiff's accident, this defense was not communicated to the jury. Under the circumstances, the district court erred in refusing to give Honda's proposed instructions.[1]

■ There is one additional step to our analysis. As plaintiff correctly points out, a finding of error does not necessarily warrant reversal. An instructional error requires reversal only where the error is determined to be prejudicial based on a whole-record review. *Davet,* 973 F.2d at 26; *Shane v. Shane,* 891 F.2d 976, 987 (1st Cir.1989). An error is prejudicial if it could have affected the result of the jury's deliberations. *Allen v. Chance Mfg. Co.,* 873 F.2d 465, 469 (1st Cir.1989). At trial Honda adduced ample evidence that the ATV ridden by plaintiff was in poor condition on the day of the accident. Most significant is the undisputed fact that the ATV's front brakes did not work. In addition, the evidence was sufficient for the jury to have found that, at the time of the accident, the ATV had bent front forks, severely maladjusted rear brakes, unequally inflated rear tires, and pulled to the right.[2]

A rational jury, presented with Honda's subsequent alteration defense, could have found that any or all of the alleged alterations or modifications "substantially caused" plaintiff's injuries. Consequently, the court's instructional error could have changed the outcome of the trial. Honda was not only entitled to have the jury instructed on this defense, but it is evident that the court's failure to give the instruction was reversible error.

■ Plaintiff raises one additional argument that warrants brief discussion. He maintains that the district court's failure to give a subsequent alteration charge, even if reversible error, has no bearing on the negligent failure to warn claim. This argument

---

1. Honda timely objected to the district court's refusal to give several of its proposed jury instructions:
 [1] [T]he Honda defendants shall not be held liable for product liability damages where a substantial cause of the accident was a subsequent alteration or modification of the all terrain vehicle.
 [2] [F]ailure to properly maintain the braking system, steering system and other safety related items can constitute alteration or modification of the all terrain vehicle.
 [3] [I]f you find that certain safety related items on the all terrain vehicle were improperly maintained and this improper maintenance created a danger that was a substantial cause of Mr. LaPlante's injuries … then you must find the Honda defendants are not liable for plaintiff's injuries.

Appellants' Second Supplemental Jury Instructions at 1–2. Plaintiff argues that the above request was defective because Honda did not label it as an affirmative defense. Assuming plaintiff is correct, the judge still had a duty to submit the statutory defense to the jury. *See Jerlyn Yacht Sales v. Roman Yacht Brokerage,* 950 F.2d 60, 69 n. 16 (1st Cir.1991).

2. To underscore the poor condition of the ATV, Sergeant James Shirley, its owner prior to Kallhoff, testified that he paid only $25 for the ATV. Trial Transcript of August 2, 1993, Morning Session at 49. In addition, Shirley testified that he did not make any significant repairs to the vehicle, and that the vehicle's condition appeared unchanged when he saw it one week prior to the accident. *Id.* at 53, 56.

fails for two reasons. First, § 9–1–32 expressly covers failure to warn claims as well as design defect claims. R.I.Gen.Laws § 9–1–32(a)(1) ("product liability damages" includes damages for personal injuries sustained by reason of an alleged defect in a product or an alleged failure to warn against a danger). Second, the case cited by plaintiff as support for this proposition, *Witthauer v. Burkhart Roentgen, Inc.*, 467 N.W.2d 439 (N.D.1991), is clearly distinguishable. In *Witthauer* the court held that a North Dakota statute similar to § 9–1–32 did not provide manufacturers with a defense to claims of negligent failure to warn consumers of dangers caused by foreseeable alterations or modifications to a product. Here, plaintiff's claim is that Honda failed to warn him of dangers caused by the ATV's original design defect, not by a foreseeable modification or alteration. Accordingly, *Witthauer* is inapposite. We have considered plaintiff's other arguments anent § 9–1–32 and find them to be without merit.

### B. *Scope of Retrial*

■■■■ This leaves us with the question of which issues should be retried. It is well settled that "[a]n appellate court has broad discretion to remand for a new trial on all, or only some, of the issues in the case." *Dopp v. HTP Corp.*, 947 F.2d 506, 518 (1st Cir. 1991) (collecting cases); *see also* Fed. R.Civ.P. 59(a) (permitting a new trial on "all or part of the issues"). A new trial may not, however, be limited to fewer than all the issues unless it clearly appears that the issues to be retried are so distinct and separable from the other issues that a trial of those issues alone may be had without injustice. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931); *Kassel v. Gannett Co.*, 875 F.2d 935, 953 (1st Cir.1989).

All of the issues pertaining to liability must be retried, including comparative negligence. On balance, we do not think that a new trial limited to Honda's liability, but excluding the extent of its liability, would be fair. Moreover, comparative negligence is regarded as

a liability concept. *See Winn v. Lafayette Town House*, 839 F.2d 835, 837 (1st Cir. 1988); *Akermanis v. Sea–Land Serv., Inc.*, 688 F.2d 898, 906–07 (2d Cir.1982), *cert. denied*, 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983), and *cert. denied*, 464 U.S. 1039, 104 S.Ct. 700, 79 L.Ed.2d 165 (1984).

■■■ There is no basis on the record, however, for retrying the jury's damage award.[3] The liability issues in this case are so distinct and separable from the damages issue that a partial trial of the former may be had without injustice. *See Allen*, 873 F.2d at 473–74 (new trial on liability only where error did not affect determination of damages); *Winn*, 839 F.2d at 837 (retrial on liability only where damages properly determined); *see generally* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2814 at 95 (1973) (there may be a new trial on liability with the prior determination of damages allowed to stand). This is particularly true here because the trial judge submitted detailed interrogatories to the jury, and thus we know the jury's total damage award to the plaintiff, as well as the amount discounted due to comparative negligence. If the comparative negligence figures are changed as a result of the new trial, the total damage award can be adjusted accordingly.

Because we vacate and remand for a new trial on both the strict liability and negligence claims, as well as comparative negligence, it is unnecessary for us to address Honda's remaining arguments regarding these matters. But in order to expedite the retrial, we have considered one such argument.

### C. *Evidence of Honda's Profits from ATV Sales*

■■■ Plaintiff's counsel was permitted, over Honda's objection, to read the following interrogatory and answer to the jury in connection with his negligent failure to warn claim:

Q. Please state the total gross revenues, profits and net income from the sale of the

---

**3.** Honda does not argue that the amount of the jury's unadjusted damage award, $9.6 million, or

any component of that award, is excessive or shocking.

all-terrain vehicles for the years 1970 through 1989 in each and every country where ATVs are or were offered for sale to the public. Please respond separately for each listed entity, Honda Motor Company, Inc., American Honda Motor Company, Inc., Honda R & D Company, Limited.

A. [I]n 1987 it was calculated for the period January 21, 1979 to June 25, 1985, gross receipts for ATVs approximated $1,722,881,000. Although American Honda does not keep records of net profit by ATV product line it allocated expenses pursuant to reasonable accounting principles to obtain a sum comparable to pre-tax net profits in the approximate sum of $73,371,000.

Honda argues that the evidence of its profits from ATV sales was irrelevant and therefore inadmissible. Assuming the evidence was relevant, Honda argues that its probative value was substantially outweighed by its prejudicial effect.

"Evidence is relevant if it has any tendency to make the existence of any fact consequential to the determination of the action more or less probable." *United States v. St. Michael's Credit Union*, 880 F.2d 579, 600 (1st Cir.1989) (internal quotation marks and citation omitted); *see also* Fed.R.Evid. 401. After plaintiff's counsel read the interrogatory and answer, the trial judge explained to the jury that

> [t]he evidence [of Honda's profits] is being presented only to assist you in determining what Honda may have known or not known about the particular vehicle that's the subject of this case. In other words, it's to assist you in understanding or reaching conclusions as to what Honda may have known or believed about the ATC 200 or why it acted as it did and so forth.... [Y]ou're not being asked to be Robin Hoods here and take money from Honda simply because they may have made money on the sale of this vehicle. The only purpose of this evidence is, as I said, to assist you in reaching whatever conclusions you think are warranted about whether the vehicle as used had means to be dangerous or what Honda may have known about the vehicle or what it might

have believed about the safety of the vehicle.

Near the end of the trial the court commented that the records of Honda's ATV profits "seemed to be probative of the, shall we say, the credibility of the explanation by Honda; and the Court gave a limit[ing] instruction to the jury at that time."

The first question is whether the challenged evidence was relevant to plaintiff's negligent failure to warn claim. In Rhode Island, a defendant has a duty to warn if he knew or should have known about the product's dangerous propensities which caused plaintiff's injuries. *Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I.1985); *Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1043 (R.I.1980). Failure to properly perform this duty as a reasonably prudent manufacturer would have under the same or similar circumstances, constitutes actionable negligence. *Scittarelli*, 415 A.2d at 1043.

A defendant's motive for its action or inaction is, generally speaking, immaterial to the question of whether the defendant acted negligently. *See Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir.1990). This is because the negligence inquiry measures behavior against an objective standard, without reference to the defendant's state of mind. *See Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 52 (4th Cir.1993); *Jones v. Wittenberg Univ.*, 534 F.2d 1203, 1211 (6th Cir.1976); *see generally* W. Page Keeton, *Prosser and Keeton on Torts*, § 31 at 169–70 (5th ed. 1984). Here, however, whether or not Honda had a duty to warn plaintiff of the ATV's dangerous propensities depended upon its subjective knowledge of those dangers. Consequently, the evidence of Honda's profits from ATV sales was, as we demonstrate in the ensuing paragraph, relevant to plaintiff's negligent failure to warn claim.

With respect to his negligence claim plaintiff alleged that, prior to his accident, Honda knew that its ATVs would "plow" (*i.e.*, continue in a straight line even when the handlebars are turned) under normal riding conditions unless the rider shifted his or her weight in a counterintuitive manner. Honda denied that it had any knowledge of this danger. Honda's profits from ATV sales was

introduced as evidence that Honda's failure to provide adequate warnings about plowing resulted from greed, not from lack of knowledge. Therefore, proof of profits as evidence of motive, while not material to any element of the failure to warn claim, was probative of an issue relevant to the case: the credibility of Honda's explanation for its inaction.

 Generally speaking, "[a]ll relevant evidence is admissible." Fed.R.Evid. 402. Under Rule 403, however, relevant evidence may be excluded if the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice" to the party against whom it is offered. Fed. R.Evid. 403; *see also Raymond v. Raymond,* 938 F.2d 1518, 1523–24 (1st Cir.1991); *St. Michael's Credit Union,* 880 F.2d at 601. Although the evidence of Honda's profits from ATV sales was of some probative value, we believe the danger that this evidence would unfairly prejudice the jury was overwhelming.

The evidence was, at best, marginally relevant and of scant probative value to plaintiff's failure to warn claim. On the other hand, the risk that the jury would be prejudiced by this reference to the enormous profitability of Honda's ATVs was almost inescapable. The potentially prejudicial nature of this "motive" evidence in the liability phase of the trial was one of the factors that prompted the district court to try the issue of punitive damages separately. While the court did give a limiting instruction to the jury warning against equalizing wealth between rich and poor, it did not alert the jury

to the impropriety of punishing Honda for an unsavory motive. The inadequacy of the limiting instruction coupled with the highly attenuated relevance of the evidence leads us to believe that the district court miscalibrated its Rule 403 scales.

Honda argues that the admission of this evidence was reversible error, as it skewed the jury's allocation of fault, and infected its liability determinations. Because we have already ordered a new trial on both of these matters, we need not decide whether the district court's error in admitting the evidence of Honda's profits from ATV sales warrants a new trial. Nevertheless, we hold that this material should not be admitted on retrial. In addition, any references to that information, such as the one made by plaintiff at closing argument, should not be allowed.[4]

On appeal Honda has raised two arguments relating to the damages award that should be addressed at this time.

### D. *Choice-of-Law*

 Honda argues that the district court's decision to apply Rhode Island, rather than Colorado law, to the issue of compensatory damages was erroneous.[5] We disagree.

 At the outset, we reject plaintiff's contention that Honda failed to preserve the choice-of-law issue. This matter was timely and squarely presented to the district court prior to trial, and was decided in plaintiff's favor. Honda was under no obligation to

---

4. The following remarks were made, albeit without objection, during plaintiff's summation:

Well, I told you at the beginning of this case that the very disturbing, ... one of the most disturbing aspects of this case is something that I believed throughout my work on this case.... Honda's actions or more truthfully their inactions in this case were motivated by greed. They were motivated by greed.

Do you remember when I stood before you on the last day of Plaintiff's case and I read to you that interrogatory answer concerning the amount of money that Honda made in a six-year period from 1979 to 1985 from ATVs, and I stood here and I read it, and you may have been able to notice, I almost became overwhelmed with emotion when I was reading that because it sunk into me at that point what really was the reason Honda didn't do any-

thing to warn people about this machine. It was money. It was a business decision. They were making just between 1979 and 1985 $1.7 billion selling these machines in this country.... I submit to you that Arthur LaPlante's accident would not have happened if this company had thought about people before money. Had they thought about people before money.

5. The difference between the two is substantial. While neither state limits a plaintiff's recovery of "economic" damages, or damages for physical impairment and disfigurement, Colorado sets a $250,000 cap on damages for "noneconomic loss or injury," (*i.e.,* pain and suffering), Colo.Rev. Stat. § 13–21–102.5 (1987 & 1993 Supp.). Rhode Island has no such limit.

renew its motion later in the proceedings. *See Union Mut. Life Ins. Co. v. Chrysler Corp.,* 793 F.2d 1, 17 (1st Cir.1986) (no waiver where choice-of-law matter was "brought with sufficient clarity to the [district] court's attention"); *see also Jaurequi v. John Deere Co.,* 986 F.2d 170, 173 (7th Cir.1993) (to preserve choice-of-law issue for appeal party only needs to timely notify court of the applicability of another state's law).

A federal court sitting in diversity must apply the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Manuf. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Crellin Technologies, Inc. v. Equipmentlease Corp.,* 18 F.3d 1, 4 (1st Cir.1994). Therefore we turn our attention to Rhode Island's choice-of-law principles.

In resolving conflict of law disputes arising out of tort actions, Rhode Island employs an interest-weighing approach. *Blais v. Aetna Cas. & Sur. Co.,* 526 A.2d 854, 856 (R.I.1987); *Pardey v. Boulevard Billiard Club,* 518 A.2d 1349, 1351 (R.I.1986); *Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917, 923 *cert. dismissed,* 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968). Under this approach various interests are weighed in order to decide which jurisdiction has the most significant relationship with reference to a particular substantive issue. *Pardey,* 518 A.2d at 1351; *Woodward,* 243 A.2d at 923. The first set of factors to be taken into account are (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the place that the parties call home (*e.g.,* their domicile, residence, place of incorporation, or place of business); and (4) the place where the relationship, if any, between the parties is centered. *See Brown v. Church of the Holy Name,* 105 R.I. 322, 252 A.2d 176, 179 (1969); *Putnam Resources v. Pateman,* 958 F.2d 448, 464 (1st Cir.1992).

The resolution of choice-of-law problems may not always turn on the number of contacts, but rather, the qualitative nature of those contacts affected by the following factors: (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *See Brown,* 252 A.2d at 178; *Blais,* 526 A.2d at 856.

Our review of the district court's ruling is plenary. *Pateman Resources,* 958 F.2d at 464; *Quaker State Oil Refining Corp. v. Garrity Oil Co.,* 884 F.2d 1510, 1515 (1st Cir.1989). In the present case, Honda wants Colorado and not Rhode Island law to apply to the measure of compensatory damages available to plaintiff, but not to the substantive rules of liability governing plaintiff's claims. There is no reason that this cannot be done. Under the doctrine of depecage, different substantive issues in a tort case may be resolved under the laws of different states where the choices influencing decisions differ. *See Pateman,* 958 F.2d at 465; *Ashland Oil, Inc. v. Miller Oil Purchasing Co.,* 678 F.2d 1293, 1304 (5th Cir. 1982) (laws of different states may apply to issues of liability and damages in one action). It follows that, in conducting our choice-of-law analysis, we must consider the states' interests regarding the distinct issue of compensatory damages, and not their interests generally. Rhode Island ascribes to the principles of depecage in tort cases. *Pateman Resources,* 958 F.2d at 465.

Regarding the number of contacts, we can discern no material difference between Rhode Island and Colorado. Although the injury occurred in Colorado, none of the defendants are domiciliaries of Colorado.[6] Furthermore, the tortious conduct allegedly giving rise to plaintiff's injuries occurred in Japan, where the subject ATV was designed and its warnings devised. *See Price v. Litton Sys., Inc.,* 784 F.2d 600, 604 (5th Cir. 1986) (conduct occurred at place of design in design defect case). Finally, there being no "relationship" between the parties in the ordinary sense of the word, this factor is unhelpful in making a choice-of-law determination. *See Allison v. ITE Imperial Corp.,* 928

---

6. American Honda is a California corporation with its principal place of business in that state. Honda Motor Co. and Honda R & D Co. are both Japanese corporations and have their principal place of business in that country.

F.2d 137, 142 & n. 5 (5th Cir.1991) (this factor is not helpful in products liability cases where there was no preexisting relationship between the parties); *see also* Restatement (Second) of Conflict of Laws § 145 (factor in choice-of-law analysis is place where the relationship, "if any", of the parties is centered). Consequently, Colorado, as the place of injury, has a single material contact with the present action.

Rhode Island too has one contact with this litigation because, at the time of the accident, plaintiff was a domiciliary of Rhode Island. *See* Restatement (Second) of Conflict of Laws § 17 ("A person does not usually acquire a domicil of choice by his presence in a place under physical or legal compulsion."); *Stifel v. Hopkins,* 477 F.2d 1116, 1122 (6th Cir.1973) (presence at a military station does not make the station serviceman's domicile because he is there subject to superiors' orders); *Ellis v. Southeast Constr. Co.,* 260 F.2d 280, 281–82 (8th Cir.1958) (same). And, predictably, plaintiff returned home to Rhode Island immediately after the accident.[7]

That Rhode Island was plaintiff's domicile at the time of the accident is conceded by the parties, and is amply supported by the record—throughout his stay in the military plaintiff continued to pay income tax in Rhode Island, and, on his 1987 reenlistment papers, plaintiff listed Rhode Island as his home. That plaintiff was stationed at an army base in Colorado at the time of the accident was a matter of pure chance. In fact, in his six years of service, plaintiff had been stationed in Hawaii, Maryland, Kentucky and Korea prior to arriving in Colorado.

Because the number of contacts claimed by each state is equivalent, we examine the additional factors enumerated by the Rhode Island courts, beginning with "predictability of results." This factor militates against the application of Colorado law. Honda, a large

multi-national corporation, cannot argue convincingly that it expected Colorado law to apply to a case arising from a product manufactured in Japan and involving a Rhode Island citizen simply because the product was originally sold in Colorado. It would be difficult for Honda to persuade us that it molded its behavior in reliance on Colorado's damages law, particularly where that law was not enacted until four years after the subject ATV was thrust into the stream of commerce. *See Roy v. Star Chopper Co.,* 584 F.2d 1124, 1129 (1st Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). Honda certainly did not purchase liability insurance based on its potential exposure under a nonexistent Colorado law. *See Turcotte v. Ford Motor Co.,* 494 F.2d 173, 178 n. 6 (1st Cir.1974). Honda can neither claim nor rely on a vested right to limited exposure for non-economic damages under Colorado law. *Jaurequi,* 986 F.2d at 186. Consequently, Honda's justified expectations would not be upset by the application of Rhode Island law.

We turn to the next factor: maintenance of interstate order. " 'Interstate order is served when application of one state's law offends no law or policy of the other state.' " *Roy,* 584 F.2d at 1129 (quoting *Turcotte,* 494 F.2d at 178). To perform this analysis, we must identify the purposes or policies which underlie each state's rule of law, and the degree to which the purposes underlying each rule would be furthered by the rule's application. Inevitably, this analysis subsumes the fourth factor delineated by the Rhode Island courts: "advancement of the forum's governmental interests."

Colorado has little governmental interest in limiting the amount of damages for pain and suffering available to plaintiff in the present litigation. The Colorado statute limiting the amount of damages for pain and suffering in civil actions, Colo.Rev.Stat. § 13–

---

7. Honda argues that plaintiff's post-accident return to his home state should not factor into our equation because "a litigant's decision to move to the forum state after the cause of action accrued should be accorded minimal weight in the choice-of-law analysis." Appellants' Brief at 44. As the cases cited by Honda illustrate, *see, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797,

820, 105 S.Ct. 2965, 2978, 86 L.Ed.2d 628 (1985); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P.2d 727, 730 (1967), this general rule was adopted in order to discourage forum shopping. Where, as is the case here, there is not the slightest hint of forum shopping, plaintiff's return to Rhode Island should not be ignored.

21–102.5, reflects an economic policy consideration. According to the Colorado Supreme Court, "[i]t is clear from the legislative history of section 13–21–102.5 ... that the primary goal of the legislature was to increase the affordability and availability of insurance by making the risk of insured entities more predictable." *General Elec. Co. v. Niemet,* 866 P.2d 1361, 1364 (Colo.1994). Thus, the goal of Colorado's legislature was:

> to improve the predictability of risks faced by insurance companies. If an insurance company can predict risks with reasonable accuracy, then it can also predict its losses and profits. The concern of an insurance company is the risk associated with insuring each individual insured, not with denying an injured person damages that may be paid by another insurance company or person.

*Id.* at 1365. The crucial question, then, is whether, on the facts of this particular case, Colorado's policy will be advanced by the application of its damages cap.

We can see no reason why the Colorado legislature would be concerned with the affordability of insurance to a multinational Japanese corporation or its wholly-owned subsidiary, a California corporation. Honda sells its cars, motorcycles and recreational vehicles in all fifty states, and Colorado's damages law plays, at best, an insignificant role in setting Honda's insurance rates. In fact, there is no evidence in the record that Honda has ceased doing business in any state because of a failure by that state to limit the amount of damages a plaintiff may recover in a civil action.

Rhode Island courts, on the other hand, have repeatedly stressed that a plaintiff should be fully compensated for his personal injuries, including pain and suffering. *See, e.g., Hayhurst v. LaFlamme,* 441 A.2d 544, 548–49 (R.I.1982); *Kelaghan v. Roberts,* 433 A.2d 226, 230 (R.I.1981). Domiciliary states have a strong interest in the welfare of their plaintiffs, and in seeing that their plaintiffs are adequately compensated for their injuries. *See In re Air Crash Disaster Near Chicago,* 644 F.2d 594, 612–13 (7th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); *Burgio v. McDonnell Douglas, Inc.,* 747 F.Supp. 865, 872 (E.D.N.Y.1990) ("Where courts have applied the law of the place of injury, the issue has often been liability as opposed to [compensatory] damages." (citing cases)). This interest is best served by applying the law of the plaintiff's domicile to the measure of compensatory damages. *In re Air Crash Disaster,* 644 F.2d at 613. In the instant case, Rhode Island's interest would be frustrated rather · than advanced were Colorado law applied.

The interests of simplification of the judicial task and application of the better rule of law do not weigh heavily in either state's direction. As to the former, we cannot see how the judicial task would be more or less simplified by application of one rule as opposed to the other. As for the latter, the Rhode Island Supreme Court would undoubtedly favor a compensatory damage standard without limits. We are confident that a Rhode Island court faced with this choice-of-law dilemma would apply its own law. The district court, it follows, acted properly in applying Rhode Island law.

### E. *Prejudgment Interest*

Honda argues that prejudgment interest should not be assessed on future damages, or on damages awarded for pain and suffering. A brief foray into Rhode Island law evidences the futility of Honda's arguments.[8]

In arguing that the trial court erred in applying Rhode Island's prejudgment interest statute to future damages, Honda maintains that "interest" is simply compensation for the loss of use of money, and that, "[i]n light of the common understanding of the term, only Humpty Dumpty would be brazen enough to assert that interest encompasses monies paid to compensate for the time-value of money that has not yet been expended. *See* L. Carroll, *Alice's Adventures in Won-*

---

8. In light of our determination that a Rhode Island court would apply its own law to the issue of compensatory damages, so too would it apply its own prejudgment interest statute. *See John-son v. Continental Airlines Corp.,* 964 F.2d 1059, 1064–64 (10th Cir.1992) (law governing compensatory damages should govern prejudgment interest).

*derland & Through the Looking–Glass* 186 (Signet Classic 1960)." Appellants' Brief at 52. This argument, while colorful, is substantively wrong.

The Rhode Island prejudgment interest statute provides, in pertinent part:

In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein.

R.I.Gen.Laws § 9–21–10 (Supp.1993). The Rhode Island Supreme Court has frequently pointed out that "the Legislature's primary intention [in enacting the prejudgment interest statute] was not to add interest but to establish a device to encourage settlements of cases sounding in tort without undue delay." *DiMeo v. Philbin*, 502 A.2d 825, 826 (R.I.1986) (citing cases); *see also Pray v. Narragansett Imp. Co.*, 434 A.2d 923, 930 (R.I.1981); *Roy*, 584 F.2d at 1135; *cf. Rhode Island Turnpike & Bridge Auth. v. Bethlehem Steel Corp.*, 446 A.2d 752, 757 (R.I.) (noting that statute serves two purposes, promotion of early settlements and compensation for the loss of use of money), *appeal dismissed*, 459 U.S. 938, 103 S.Ct. 247, 74 L.Ed.2d 194 (1982); *Murphy v. United Steelworkers of Amer.*, 507 A.2d 1342, 1346 (R.I. 1986) (same).

In *Pray*, the court held that § 9–21–10 applies to damages awarded in wrongful death actions, even though a jury's verdict in a wrongful death action includes a prediction of what the decedent would have earned in the future, discounted to present value. *Pray*, 434 A.2d at 930. The court acknowledged that simultaneous application of the prejudgment interest and wrongful death statutes would "allow interest to accrue upon interest as well as upon an award," but observed that this would not frustrate the purpose of the prejudgment interest statute, namely, promotion of early settlements. *Id.* at 930. Moreover, the court held that, due to the mandatory nature of the prejudgment interest statute, the trial judge would have

had no authority to prevent the addition of interest to future damages:

"In our opinion the statute is neither ambiguous nor equivocal. It speaks imperatively and directly not to the court but to the clerk who is ordered to add 'to the amount of damages, interest thereon....' This is a purely ministerial act; it contemplates no judicial intervention. The legislative fiat is explicit and admits of no conditions or reservations. The claim for damages having been duly reduced to judgment the addition of interest is peremptory."

*Pray*, 434 A.2d at 931 (quoting *Kastal v. Hickory House, Inc.*, 95 R.I. 366, 187 A.2d 262, 264 (1963)).

The court further noted that, had it wanted to, the legislature could have excluded wrongful death actions from the ambit of the prejudgment interest statute, but chose not to:

"In the face of a statute so clear and unambiguous there is no room for the application of the usual canons of statutory construction. In such a case the statute declares itself. We may not where no ambiguity exists search beyond the statute for a different meaning. Even hardship does not justify a court in reading into a statute something contrary to its unequivocal language. Only when the legislature sounds an uncertain trumpet may the court move in to clarify the call. But when the call is clear and certain as it is here we may not consider whether the statute as written comports with our ideas of justice, expediency or sound public policy. In such circumstances that is not the court's business."

*Id.* at 931 (quoting *Kastal*, 187 A.2d at 264–65).

While it has provided us with a literary allusion, Honda has chosen to ignore both the primary purpose of the Rhode Island prejudgment interest statute, and binding precedent that firmly establishes that the statute, which does not distinguish between past and future damages, means what it says, and says what it means. It follows that prejudgment interest was properly assessed on all future damages awarded to plaintiff.

Honda also argues that damages for "pain and suffering" are not "pecuniary," and are therefore beyond the scope of the prejudgment interest statute. Like bumper-to-bumper traffic, this argument goes nowhere.

Section 9–21–10 calls for the imposition of interest in any "civil action" in which a verdict or decision awards "pecuniary damages." In construing the statute, the Rhode Island Supreme Court has explained "that the Legislature, in employing the term 'pecuniary,' was using it as a synonym for compensatory." *Murphy,* 507 A.2d at 1346.

Because awards of punitive and nominal damages are not designed to compensate a plaintiff, they fall outside the reach of the prejudgment interest statute. *Id.; DeLeo v. Anthony A. Nunes, Inc.,* 546 A.2d 1344, 1348 (R.I.1988), *cert. denied* and *appeal dismissed,* 489 U.S. 1074, 109 S.Ct. 1522, 103 L.Ed.2d 828 (1989). On the other hand, the Rhode Island Supreme Court has consistently held that damages for pain and suffering are "in the nature of compensatory damages." *Trainor v. Town of North Kingstown,* 625 A.2d 1349, 1350 (R.I.1993) (citing cases). This is so even though " 'no particular formula or rule of thumb is available either to a jury or to [a] court for computing the damages which are due to a plaintiff for pain and suffering.' " *Hayhurst,* 441 A.2d at 547 (quoting *Worsley v. Corcelli,* 119 R.I. 260, 377 A.2d 215, 217 (1977)). We are led inexorably to the conclusion that Rhode Island's prejudgment interest statute encompasses damages awarded for pain and suffering.

**F. *Plaintiff's Cross–Appeal***

Plaintiff's claim for punitive damages was tried subsequent to the issues of liability and compensatory damages. At the close of plaintiff's case on punitive damages, the district court granted Honda's motion for judgment as a matter of law under Fed. R.Civ.P. 50(a). Plaintiff appeals this ruling.

We exercise plenary review over the district court's grant of a motion for judgment as a matter of law, and apply the same standard as applied below. *See Cook v. State of Rhode Island Dep't of Mental Health, Retardation, and Hosp.,* 10 F.3d 17, 21 (1st Cir.1993). Such a motion should be granted if, viewing the evidence in a light most favorable to the nonmovant, no jury could properly decide in that party's favor. *Id.* We cannot assess the weight of conflicting evidence or pass on the credibility of witnesses. *Id.* It is undisputed that the district court's examination of the evidence here diligently followed this standard.

We turn to Rhode Island law for the lens through which we must view the evidence. The Rhode Island Supreme Court has recently articulated the standard governing claims for punitive damages:

> [A] party seeking an award of punitive damages bears the burden of proving evidence of such willfulness, recklessness or wickedness on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished.

*Soares v. Ann & Hope, Inc.,* 637 A.2d 339, 351 (R.I.1994) (internal quotation marks and citations omitted); *see also Sarkisian v. NewPaper, Inc.,* 512 A.2d 831, 836 (R.I.1986) (evidence must indicate that defendant acted maliciously and in bad faith). It is a question of law for the trial court to decide whether the plaintiff's proofs support an award of punitive damages. *Soares,* 637 A.2d at 351. Only if that court determines that the facts of a case warrant such an award, should it allow the jury to decide the amount, if any, of that award. *Id.*

We have conducted an exhaustive review of the record, and are in complete agreement with the district court's ruling. Even assuming (without deciding) that sufficient evidence was introduced at the first phase of the trial to support plaintiff's strict liability and negligence claims, no reasonable juror could have found, at the close of plaintiff's punitive damages evidence, that Honda acted maliciously, in bad faith, or with the intent to cause harm. *See Palmisano v. Toth,* 624 A.2d 314, 318 (R.I.1993). Accordingly, the judgment for Honda on plaintiff's claim for punitive damages must be affirmed.

## III.

### CONCLUSION

The judgment of liability is vacated, and the case is remanded for a new trial on all liability issues. On retrial the district court should exclude the evidence of Honda's profits from ATV sales, and prohibit references to that information similar to the one made in closing argument at the original trial.

We uphold the district court's decision to apply Rhode Island law as to compensatory damages, and conclude that, should plaintiff prevail on retrial, the award of damages shall stand, and prejudgment interest should be assessed on the entire damage award. The judgment for Honda on plaintiff's claim for punitive damages claim is affirmed. No costs to either party.

*So ordered.*