[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, this matter comes before the Court on a motion for partial summary judgment filed by Plaintiff Christine Coleman ("Plaintiff"). The Plaintiff's motion requires the Court to determine whether the applicable statutory law imposes vicarious liability on the owner of an aircraft for any negligence attributed to an authorized lessee of said aircraft. Specifically, the Plaintiff asks the Court to declare that — in the event a jury finds Brooks Kay negligent — Windham Aviation ("Defendant" or "Defendant Windham") is vicariously liable for said negligence. Invoking the doctrine of federal preemption, Defendant Windham has filed a timely objection advancing the argument that 49 U.S.C. § 44112 negates the imposition of vicarious liability solely on the basis of ownership. Although there are numerous defendants, the current motion deals only with Defendant Windham. On June 13, 2005, the parties presented oral arguments to the Court on this motion. For the reasons set forth below, the Plaintiff's motion for partial summary judgment is granted.
 Facts and Travel
Given that the issue before the Court is strictly a matter of law, the Court will confine the recitation of facts to only those relevant to the resolution of the Plaintiff's motion for partial summary judgment. For purposes of this motion, the Court will adopt the narrative set forth in the National Transport Safety Board's Factual Report ("NTS Report") concerning the events of November 16, 2003.
On November 16, 2003, Stephen Coleman ("Coleman") and Hardy Lebel ("Lebel") were operating a Cessna 180, FAA Registration N34AG, Aircraft Serial Number N32561 ("Cessna").[1] Coleman and Lebel were practicing take-off and landing procedures at Westerly State Airport. Both Coleman and Lebel had decades of flying experience including time spent in the employment of New England Aviation, Inc. as commercial pilots.
On even date, Co-Defendant Brooks Kay (`Kay") who held a single-engine land airplane rating, rented a Piper PA-28-181, FAA Registration N2885D ("Piper") from Defendant Windham.[2] Kay obtained $50,000 in liability insurance coverage through Defendant Windham. Additionally, Defendant Windham had liability insurance coverage for the corporation in the amount of $1,000,000.
Kay took off from Windham Airport in Connecticut with the intent to land at Westerly State Airport in Rhode Island. After he reached Westerly State Airport, Kay made his first attempt to land on Runway 32; however, he determined he was high on final approach. Consequently, he was forced to abort the landing. Upon the second final approach to land the Piper on Runway 32, Kay observed the Cessna "about to get on Runway 32." NTS Report at 1. According to Kay, he thought the Cessna would remain on the displaced threshold portion of the runway until after he landed the Piper. For this reason, Kay continued his approach and attempted to land on Runway 32. Tragically, the Cessna did not remain on the displaced threshold, and the Piper and Cessna collided as the Cessna attempted to take off from Runway 32. The force of the collision caused the Cessna to turn perpendicular to the runway and impact the ground. Both Coleman and Lebel suffered fatal injuries. Despite the severity of the collision, Kay managed to ground the Piper. Neither Kay nor his two passengers sustained injuries.
As a result of the fatal collision between the Cessna and the Piper, the Plaintiff filed the underlying wrongful death action to recover losses allegedly caused by the collective negligence of the various defendants.[3] In filing the instant motion, the Plaintiff has requested the Court to declare that — in the event a jury finds that thenegligence of Brooks Kay proximately caused the fatal collision — Defendant Windham Aviation is vicariously liable for said negligence by virtue of its ownership of the leased Piper.
 Standard of Review
"Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law."Konar v. PFL Life Ins. Co., 840 A.2d 1115, 1117 (R.I. 2004). Pursuant to Rule 56(c), "summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
For purposes of the Plaintiff's motion for partial summary judgment, it is critical to note that Defendant Windham does not dispute its ownership of the Piper at the time of the accident nor does it dispute that it authorized Kay to operate the Piper. Because no facts material to the issue of vicariously liability exist, the Court's analysis proceeds directly to whether the Plaintiff is entitled to judgment as a matter of law.
In support of her motion for partial summary judgment, the Plaintiff argues that the underlying action is governed by state law — either Rhode Island or Connecticut. The Plaintiff contends that application of either state's law will lead to the same result. Without providing a counterargument to the imposition of vicarious liability under either Rhode Island or Connecticut state law, the Defendant objects to the instant motion suggesting the Court refer to a different statutory scheme. The Defendant argues that federal law — specifically49 U.S.C. § 44112 — preempts state law by exempting aircraft owners not in actual possession or control from the imposition of vicarious liability for the negligence of lessees.
To determine whether judgment as a matter of law is warranted, the Court must determine whether § 44112 insulates Defendant Windham from vicarious liability thereby preempting conflicting state laws. If the Court finds that federal law does not apply, the Court must then ascertain whether Rhode Island or Connecticut state law controls the action.
 Vicarious Liability
The Defendant's invocation of federal preemption altered the relative simplicity of a choice of law between two neighboring states by adding a different dimension to the analysis. Defendant Windham argues that the language of 49 U.S.C. § 44112 clearly exempts aircraft owners from the imposition of vicarious liability. Accordingly, Defendant Windham contends that § 44112 preempts any provision of state law which purports to impose vicarious liability on the basis of aircraft ownership. Captioned Limitation of liability, section 44112 reads as follows:
 "(a) Definitions. — In this section —
 (1) "lessor" means a person leasing for at least 30 days a civil aircraft, aircraft engine, or propeller.
 (2) "owner" means a person that owns a civil aircraft, aircraft engine, or propeller.
 (3) "secured party" means a person having a security interest in, or security title to, a civil aircraft, aircraft engine, or propeller under a conditional sales contract, equipment trust contract, chattel or corporate mortgage, or similar instrument.
 (b) Liability. — A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage on land or water only when a civil aircraft, aircraft engine, or propeller is in the actual possession or control of the lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of —
 (1) the aircraft, engine, or propeller; or
 (2) the flight of, or an object falling from, the aircraft, engine, or propeller."
Although a cursory review of § 44112 seems to not only support the Defendant's argument but also present a conflict with applicable state tort law liability, a deeper examination of the statute reveals a contrary result. Both an identification of the nature of the statute and a review of its legislative history have propelled the Court's analysis through a labyrinth of congressional reports, statutory provisions, and case law to reach the proper conclusion.
The proper starting point for this venture is the recognition that § 44112 is a recodification of former Title 49 of the United States Code governing Transportation. In discussing the effect of recodification, the often cited Sutherland treatise on statutory construction states:
 "Inasmuch as the function of a code is principally to reorganize the law and to state it in simpler form, the presumption is that change in language is for purposes of clarity rather than for a change in meaning.
 . . .
 The disclosure of a changed intention must be clear for it is presumed that if the language used in the code fairly admits of a construction consistent with the old law it was not the legislature's intent to change the meaning of the law through a revision of the language." 1A Norman J. Singer, Sutherland on Statutes and Statutory Construction § 28.11 at 657-60 (6th ed. 2003).
With respect to the federal statute at issue, the purpose of the recodification was to "revise, codify, and enact without substantivechange certain general and permanent laws, related to transportation, as subtitles II, III, and V-X of title 49, United States Code, `Transportation,' and to make other technical improvements in the Code." (Emphasis added.) Pub.L. No. 103-272 (1994). A brief review of the corresponding Congressional committee reports evinces Congress's strong presumption against affecting any substantive change of the predecessor statute. The statement of purpose contained in House Report 103-180 confirms the presumption against substantive change:
 "The purpose of H.R. 1758 is to restate in comprehensive form, without substantive change, certain general and permanent laws related to transportation and to enact those laws as subtitles II, III, and V-X of title 49, United States Code, and to make other technical improvements in the Code. In the restatement, simple language has been substituted for awkward and obsolete terms, and superseded, executed, and obsolete laws have been eliminated.
 . . .
 Since the purpose of H.R. 1758 is to codify changes in the law without making any substantive change in the law, no oversight findings or recommendations have been made with respect to the bill." H.R. Rpt. 103-180, at 1-6 (Jul. 15, 1993).
The United States Supreme Court addressed the effect of recodification on the substance of a predecessor law in Cass v. United States,417 U.S. 72 (1974). In Cass, the Court interpreted the rounding provision in10 U.S.C. § 687(a) which provided readjustment pay to armed forces reservists who were involuntarily released from active duty. Section 687(a) — passed in 1956 — mandated that reservists have served at least five years to obtain readjustment pay.
In 1962, § 687(a) was part of a Congressional recodification of certain military laws. The committee reports regarding the 1962 recodification explicitly stated that Congress intended no substantive change to the original statute; however, the arrangement of the recodification raised the issue of whether the rounding provision applied not only to the computation of readjustment pay but also to the five-year eligibility requirement.
After reviewing the legislative history of the predecessor statute, the Court held that the rounding provision applied only to computation of the amount of pay not to the determination of eligibility.[4]
 "[C]ongressional comments, combined with the fact that no consideration of any change in eligibility standards appears in either the cited committee reports or in the proceedings leading to adoption of the codification bill by . . . conclusively demonstrate that Congress did not reduce the minimum period of qualifying service for entitlement to readjustment benefits from five to four and one-half years when it substituted the words in the codified version of s 687(a) for the unambiguous language of the prior substantive enactments. We are unpersuaded by petitioners' claim that the codified version is nevertheless to be accepted as correctly expressing the will of Congress and as a mere unexplained version of the language of prior law. Here the meaning of the predecessor statute is clear and quite different from the meaning petitioners would ascribe to the codified law; and the revisers expressly stated that changes in language resulting from the codification were to have no substantive effect.
 . . .
 In resolving ambiguity, we must allow ourselves some recognition of the existence of sheer inadvertence in the legislative process." Id. at 82-84 (internal citations omitted).
Similar to the congressional comments referenced by the Supreme Court in Cass, both the committee reports and the corresponding public laws regarding the recodification of Title 49 explicitly state Congress did not intend to substantively change the law. Additionally, there was no consideration by either the House or the Senate of proposed substantive changes to Title 49. Following the Supreme Court's holding in Cass, this Court must effectively disregard any substantive change affected by the recodification of Title 49. Because the Plaintiff suggests that the recodification has, in fact, impermissibly expanded the scope of the predecessor statute and run afoul of the legislature expressed intent, the Court must look to the language and attendant legislative history of the predecessor statute of § 44112 — former 49 U.S.C. § 1404.
 Predecessor Statute
The predecessor statute of § 44112, 49 U.S.C. § 1404 — CaptionedLimitation of security owners' liability — reads as follows:
 No person having a security interest in, or security title to, any civil aircraft, aircraft engine, or propeller under a contract of conditional sale, equipment trust, chattel or corporate mortgage, or other instrument of similar nature, and no lessor of any such aircraft, aircraft engine, or propeller under a bona fide lease of thirty days or more, shall be liable by reason of such interest or title, or by reason of his interest as lessor or owner of the aircraft, aircraft engine, or propeller so leased, for any injury to or death of persons, or damage to or loss of property, on the surface of the earth (whether on land or water) caused by such aircraft, aircraft engine, or propeller, or by the ascent, descent, or flight of such aircraft, aircraft engine, or propeller or by the dropping or falling of an object therefrom, unless such aircraft, aircraft engine, or propeller is in the actual possession or control of such person at the time of such injury, death, damage, or loss."
A review of the legislative history supports the Plaintiff's argument that the recodification substantively alters § 1404 by extending the exemption accorded to owners/lessor for only security purposes to include all owners and lessor. Such an extension not only reflects a change in language but a fundamental contradiction of the predecessor statute's stated purpose — to encourage the financing of private airplanes.
 "Provisions of present Federal and State law might be construed to impose upon persons who are owners of aircraft for security purposes only, or who are lessors of aircraft, liability for damages caused by the operation of such aircraft even though they have no control over the operation of the aircraft. This bill would remove this doubt by providing clearly that such persons have no liability under such circumstances.
 The relief thus provided from potential unjust and discriminatory liability is necessary to encourage such persons to participate in the financing of aircraft purchases.
 . . .
 An owner in possession or control of aircraft, either personally or through an agent, should be liable for damages caused. A security owner not in possession or control of the aircraft, however, should not be liable for such damages. This bill would make it clear that this generally accepted rule applies and assures the security owner or lessee, that he would not be liable when he is not in possession or control of the aircraft.
 The limitation with respect to leases of 30 days or more, in case of lessors of aircraft, was included for the purpose of confining the section to leases executed as a part of some arrangement for financing purchases of aircraft.
 . . .
 It is the conviction of the committee that the bill should be passed to remove one of the obstacles to the financing of purchases of new aircraft." H.R. Rpt. 802-091, at 1-2 (Jun. 1, 1948).
After reviewing the committee reports, the Court has no difficulty concluding that Congress passed § 1404 to facilitate the financing of private airplanes by exempting owners or lessors holding only a security interest in an aircraft from liability for negligent operation of that aircraft. In addition, the report also explicitly states the intent of Congress to hold owners in possession of an aircraft, either personally or through an agent, liable for damages caused by negligent operation. Therefore, the recodification impermissibly extends the scope of the exemption well beyond the confines of the predecessor statute. Because the Court is bound by the intent of the predecessor statute, the Court finds that § 44112 does not provide an exemption for Defendant Windham as they outright owned the Piper involved in the fatal collision. Consequently, the Court must decide whether Defendant Windham will be liable under applicable state law.
 Choice of Law Question
When deciding choice of law questions, Rhode Island adheres to the doctrine of depecage which requires the Court to resolve choice of law questions on an issue-by-issue basis. LaPlante v. American Honda MotorCo., Inc., 27 F.3d 731, 741 (1st Cir. 1994). "Under the doctrine of depecage, different substantive issues in a tort case may be resolved under the laws of different states where the choices influencing decisions differ." Id. Accordingly, the Court must determine the applicable law for resolution of the narrow issue of vicarious liability.
In the instant case, the parties agree that both Rhode Island and Connecticut impose vicarious liability on aircraft owners for negligent operation of authorized operators. Under Rhode Island law, the applicable provision — G.L. (1956) § 1-4-3 — reads:
 "Whenever any aircraft is used, operated, or caused to be operated in this state and an action is begun to recover damages for injuries arising to the person or to the property or for the death of a person, arising out of an accident or collision in which that aircraft was involved, or arising out of an accident caused by the dropping or falling of any object from that aircraft, evidence that at the time of the accident or collision it was registered in the name of the defendant as owner is prima facie evidence that it was then being operated by and under the control of a person for whose conduct the defendant was wholly responsible, and absence of that responsibility is an affirmative defense to be set up in the answer and proved by the defendant; and for the purposes of this chapter, the term `owner' includes the legal title holder and any person, firm, copartnership, association or corporation having the lawful possession or control of an aircraft under a written sale agreement."
The applicable provisions of Connecticut law lead to the same conclusion. First, § 15-34(20) defines operation of aircraft as follows:
 "The use of aircraft for the purpose of air navigation and includes the navigation or piloting of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control thereof, shall be deemed to be engaged in the operation of aircraft within the meaning of the statutes of this state."
Next, § 15-72 states:
 "No person shall operate any aircraft carelessly, negligently or recklessly, or in such a manner as to endanger the property, life or limb of any person, having regard to the proximity of other aircraft, weather conditions, field conditions and, while in flight, the territory flown over."[5] Given that § 15-34(20) deems an owner who authorizes another to operate his or her aircraft to be engaged in the operation of aircraft, said owner would be liable for negligent operation of that aircraft under § 15-72.
After reviewing the applicable statutory provisions, the Court agrees with the parties that the application of either Rhode Island or Connecticut law will lead to the same result on the issue of vicarious liability. Consequently, the situation presents a false conflict. A false conflict exists when "(1) there is no true conflict of laws because only one state is interested in the application of its law or (2) the laws of the two states are found to be compatible." Engine Specialties, Inc. v.Bombardier, Ltd., 605 F.2d 1, 19 (1st Cir. 1979). "It is a well-established — and prudential — principle that when the result in a case will not be affected by the choice of law, an inquiring court, in its discretion, may simply bypass the choice. See, e.g., Fashion House,Inc. v. K Mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989). That course is especially attractive where, as here, the parties have taken the position that either state's law will lead to the same result." Lexington Ins.Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 46-47 (1st Cir. 2003).
In the case at bar, Rhode Island and Connecticut have compatible laws on the issue of vicarious liability for owners of aircraft. Consequently, the Court will invoke its discretion to bypass the choice of law question because the parties have conceded that the application of either state's law will lead to the same result — the imposition of vicarious liability on Defendant Windham. Therefore, the Court holds that if a jury finds Kay negligently operated the Piper thereby causing the fatal accident on November 16, 2003, Defendant Windham is vicariously liable for that negligence.
 Conclusion
After consideration of the parties' oral arguments and respective thorough memoranda, the Court finds that the material facts are not in dispute and that the Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court hereby grants the Plaintiff's motion for partial summary judgment on the issue of vicarious liability. Counsel shall prepare an order to reflect the Court's decision.
[1] At this point in the discovery process, it is unclear whether Coleman or Lebel was operating the Cessna at the time of the accident. Nevertheless, the identity of the Cessna operator is immaterial to the resolution of the instant motion.
[2] Defendant Windham is a corporation located in Windham, Connecticut and authorized to do business under the laws of the State of Connecticut.
[3] Although the Plaintiff named numerous defendants, the current motion relates exclusively to Defendant Windham.
[4] The Court rejected the petitioners' argument that resort to legislative history was forbidden when the words appear clear and unambiguous upon a superficial examination. The cases relied upon by theCass petitioners did not involve interpretation of recodified statutes, and as such, were inapposite.
[5] Although § 15-34 et seq. is a penal statute which does not expressly provide for a private cause of action, Gore v. People's SavingsBank, 235 Conn. 360, 375, 665 A.2d 1341, 1348 (1995) provides that violation of a penal statute gives rise to liability where (1) the plaintiff is within the class of persons protected by the statute; and (2) the injury is of the type which the statute is intended to protect. If the plaintiff satisfies these two prongs, he or she must establish that the defendant violated the statute at issue. Because the parties agree that Connecticut imposes vicarious liability on aircraft owners for the negligence of pilots, the Court need not engage an extensive analysis of this three-prong test.